**Richard L. MANUEL, Plaintiff-Appellee,**

v.

**William D. SALISBURY, Defendant-Appellant.**

**No. 71–1087.**

United States Court of Appeals, Sixth Circuit.

July 19, 1971.

---

**454**

William E. Dunlap, Jr., Asst. Atty. Gen., Columbus, Ohio, for defendant-appellant; William J. Brown, Atty. Gen. of Ohio, Columbus, Ohio, on brief.

David P. Hiller, Columbus, Ohio, court appointed, for appellee.

Before WEICK, CELEBREZZE, and MILLER, Circuit Judges.

PER CURIAM.

This appeal is from an order of the district court granting the Appellee's petition for writ of habeas corpus. The principle issue on appeal is whether a prosecutorial conflict of interest deprived the Appellee due process of law. The petition arose out of the Appellee's conviction by a jury, in 1963, in Ohio on four counts of unlawful possession for sale, and four counts of unlawful sale of narcotics. He received consecutive sentences totaling 90 to 180 years.

The *alleged* constitutional deprivation arose out of the following stipulated facts. The Appellee was arrested by the Dayton, Ohio police on December 17, 1962, and released on bail on January 21, 1963. Approximately three months later, on April 16, 1963, the Appellee's trial began. During the three month interval, the Appellee "paid a number of visits" to the law offices of Mr. Robert L. Abrahamson, an attorney at law. Abrahamson practiced in partnership with two other attorneys, one of whom, Mr. Keith A. Saeks, ultimately, as counsel for the State, helped prosecute the Appellee. During these visits, the Appellee "discussed the facts surrounding his narcotics charge with Mr. Abrahamson." The stipulation further provides that on one visit, the Appellee was accompanied to Abrahamson's office by Paul J. Looney, the police informant to whom the Appellee had made the four sales of narcotics that resulted in his convictions. Looney, according to the Appellee's brief, was a narcotics addict, who depended upon money supplied by the police to assuage his habit. Under police instructions, Looney deliberately lied to Abrahamson concerning the facts of the case, making statements to the effect that the Appellee was not guilty of the narcotics charges after all. The stipulation concludes that Abrahamson did not represent the Appellee at his trial; rather that the Appellee was ultimately represented by Mr. Clarence Stewart, another Dayton attorney. Prior to the Appellee's trial, Abrahamson and Stewart discussed the statements made by Looney to Abrahamson.

On these facts, the district court held, first, that the possibility that Abraham-

son communicated facts the Appellee had related to him to Saeks, his partner and the prosecutor, was sufficient to justify a finding of impermissible conflict of interest depriving the Appellee his Fourteenth Amendment right to effective assistance of counsel. Second, the district court held that the police use of Loney to lie to the defense was constitutionally impermissible.

We treat first the district court's holding that the relationship between Saeks, the prosecutor, and Abrahamson, the lawyer with whom the Appellee discussed the case, created a conflict of interest which, *per se*, deprived the Appellee of due process. The district court held it unnecessary for the Appellee to show that he was prejudiced; according to the court, the mere fact of "possible communication among the partners in the firm about the case deprived him due process." The district court noted, as do we, that the Appellee "does not allege that he can prove there was any discussion among the partners about his case" and that "moreover, after some initial meetings [between Abrahamson and the Appellee], petitioner hired another lawyer and he was not represented by the firm in which the prosecutor was a partner." The district court did not say, and the record does not disclose, whether the Appellee ever retained Abrahamson in the first place, or whether he ever considered himself to have been represented by Abrahamson. Furthermore, if the Appellee was, at one time, represented by Abrahamson, the record does not disclose why he fired Abrahamson and hired Stewart. Finally, the record does not indicate either that there was a disclosure of confidential information by Abrahamson to Saeks, or that there was an opportunity for such disclosure. On the current state of the record, it is just as likely that Abrahamson and Saeks neither spoke with each other, nor had the opportunity to do so, during any of the relevant time period.

The district court held that the mere relationship between the Appellee, Abrahamson, and Saeks created an appearance of impropriety and unfairness that jeopardized public respect for law. Respect for the system could best be maintained, the court held, by granting the writ. On the present record, we disagree.

■■ The danger to be apprehended in the instant case is that Abrahamson, having been entrusted by the Appellee with confidential information, intentionally or inadvertently disclosed all or part of it to Saeks, who used it during the course of the prosecution. While we do not doubt that such circumstances would warrant a grant of the writ, we do not find them present on the record of this case. To hold otherwise, we would have to assume that the relationship between Abrahamson and the Appellee was one entitling the Appellee to confidentiality. More need be established in the proof of a confidential relationship than that an attorney and a defendant "discussed the facts surrounding" the alleged offense. *See generally* C. T. McCormick, Evidence 183–86 (1954 ed.). We would have to assume that the statements made were entitled to confidentiality, having been stated in confidence and being of a kind to which the privilege attaches. *See id.* at 186–94. We would have to assume that Saeks and Abrahamson had access to one another and an opportunity to exchange the confidential information. Most importantly, we would have to assume that Abrahamson and Saeks did, in fact, exchange such information. The Appellee argues that this last assumption would follow logically from the foregoing, *i.e.*, that all involved here is "the most routine of daily events—an informal chat between law partners. Perhaps these two partners might have casually discussed Mr. Manuel's case over lunch or after-hours cocktails on some uneventful day over eight years ago." The short answer to this postulate is that the courts are not free to presume, without evidence to the contrary, that their officers, given opportunities to disclose their clients' confidences, so casually betray them even to members of their law firms. On the

contrary, the courts must indulge every reasonable presumption that lawyers for criminal defendants will behave in a lawful, ethical manner and in good faith. The Appellee levels some strong charges, and they must be supported by evidence. They do not follow logically, or reasonably, from the mere fact that the Appellee "discussed the facts" of his case with an attorney who was in the same law firm as the attorney who prosecuted him. The more reasonable inference, on this record, is that the apparent conflict was, if at all, an inadvertent one, and that Abrahamson made no disclosures whatsoever. We are conscious of the need to maintain public respect for law, however we are not ready to presume, as a matter of law and without clear proof to the contrary, that attorneys entrusted with their clients' secrets so casually betray them "over lunch * * *" etc. Such a presumption would irreparably undermine public trust in the administration of justice, and, having no basis in fact, would do so unjustifiably.

■ The Appellee cites Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), among other cases, for the proposition that disclosure or prejudice need not be proved in the instant case. Glasser, however, involved a conflict whereunder two co-defendants, whose defenses to criminal charges were inconsistent, were represented, under court appointment, by the same lawyer. Since the attorney might not have been able to get one of his clients off without inculpating the other, the Supreme Court held that his representation was inadequate and denied the defendant Glasser effective assistance as a matter of law. In Glasser, unlike the instant case, prejudice to the defendant need not have been proved because it was a logical and necessary consequence of the conflict. In the instant case, however, prejudice was not a necessary consequence or even a reasonable inference, for the foregoing reasons. See also Jones v. Baker, 406 F.2d 739, 740 (10th Cir. 1969).

■ Turning to the district court's alternative ground for granting relief, we do not believe that Looney's statements to Abrahamson, alone, are sufficient ground for habeas corpus. We do know, by way of stipulation, that Abrahamson discussed Looney's statements with Stewart, who ultimately defended the Appellee, however, we have no way of knowing whether they had any impact at all upon the defense, or were, in any way, prejudicial. Again, the Court is of the opinion that prejudice was not a necessary consequence of Looney's statements to Abrahamson, whose relationship with the Appellee is unclear, and who did not represent the Appellee in court. We therefore believe a per se rule is inappropriate. The district court cited Caldwell v. United States, 92 U.S. App.D.C. 355, 205 F.2d 879 (1953), for the proposition that prejudice need not be shown where the police attempt to invade the attorney-client relationship, assuming there was one here In Caldwell, however, the spy was a government agent, who, by posing as a defense assistant, completely infiltrated and gained free access to the defense. As a "double agent" he listened to the interrogation by defense counsel of witnesses and had free access to all defense records. Most importantly, however, in Caldwell, the court found that the agent actually reported back to the prosecution information he gleaned by his invasion of the attorney-client relationship. It is true that in Caldwell there was "much controversy as to whether Bradley [the agent] actually interfered with or prejudiced the defense." 205 F.2d at 880. But, the court held, the gross intrusion upon the defense, and the infiltration of the attorney-client relationship obviated the need for a showing of prejudice. See also Hoffa v. United States, 385 U.S. 293, 304–309, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).

In the instant case, the penetration of the attorney-client relationship, assuming one existed between Abrahamson and the Appellee, consisted of a single visit by Looney to Abrahamson's office. There is no allegation that Looney overheard incriminating statements, or otherwise monitored the defense. The stip-

ulation does not even strictly provide that Looney lied to Abrahamson. It states that Looney "made a statement to the attorney [Abrahamson] the import of which, if true, would be to exonerate Richard Manuel on the pending narcotics charge." There is no contention that Abrahamson in any way acted upon this statement, or that Stewart, who ultimately represented the Appellee, believed it or acted upon it. Indeed, on the current record, it may be assumed that Stewart, as the Appellee's defense attorney, personally interviewed Looney and was told the truth. In any event, the likelihood of prejudice to the Appellee is sufficiently remote and speculative that it should be proven. Hoffa v. United States, *supra*.

We believe, for the reasons stated, that the stipulation of the parties does not provide grounds sufficient for habeas corpus relief. We are therefore of the opinion that the judgment of the district court must be vacated, and that this cause must be remanded for an evidentiary hearing consistent with this opinion.

So ordered.