**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Elmo VALENCIA, Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Patty ZEPLIN, Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Randall V. COMPANY,
Defendant-Appellant.**

**Nos. 75–1342 to 75–1344.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 3, 1975.

Decided Sept. 2, 1976.

Stay Denied Nov. 15, 1976.

See 97 S.Ct. 373.

Gregory T. Merritt, Toledo, Ohio (Court appointed CJA), for appellant in No. 75–1342.

Joseph A. Flores, Toledo, Ohio (Court appointed CJA), for appellant in No. 75–1343.

Harland M. Britz, Toledo, Ohio, for appellant in No. 75–1344.

Frederick M. Coleman, U. S. Atty., Cleveland, Ohio, Patrick J. Foley, Toledo, Ohio, for appellee.

Before EDWARDS, PECK and McCREE, Circuit Judges.

McCREE, Circuit Judge.

This is a consolidated appeal in which all three defendants challenge their convictions for conspiracy to import cocaine, and one defendant challenges his conviction for the substantive offenses of possession and distribution of cocaine. The principal issue is whether the intrusion into an attorney-client relationship by a paid government informant who acted as the secretary of appellant Company's lawyer requires setting aside the convictions. We hold that if, on remand, any prejudice is shown as a result of the intrusion, the district court should order a new trial or dismissal of the indictments, as circumstances dictate.

An indictment was returned on September 25, 1974, charging nine persons [1] with conspiracy to import and distribute cocaine. 21 U.S.C. §§ 841(a)(1), 952(a), 955, 960(a)(1), 960(a)(2). In addition, Company and Oxley were charged with illegal possession and distribution of cocaine. On October 21, 1974, a trial on these charges commenced. [2]

At the trial, government witnesses testified that appellant Company traveled from Detroit, Michigan to Bogata, Columbia, where he purchased cocaine from Elmo Valencia, a resident of Columbia. Appellant Patty Zeplin lived with Valencia at the time. The Government contended at trial that Valencia, with the assistance of Zeplin, sold cocaine to Company and to defendants Oxley and Everhart to import into the United States. In addition, Valencia helped Company and his associates to obtain specially lined boots in which to conceal the cocaine to frustrate a customs search. Company and an unindicted associate of his, Greg Ford, returned to the United States in January, 1973. A customs agent discovered the cocaine that Ford was carrying when he re-entered the country and arrested him for attempting to smuggle cocaine into the United States.

Another government witness, Robert Klein, testified that Company arranged for cocaine to be mailed to Klein's address, but to a fictitious person. On June 20, 1973, the day the cocaine was delivered to Klein's home, customs agents arrested and jailed Klein, his wife, and Company on charges of conspiracy to violate federal narcotics laws. The next morning, attorney Samuel Antonelli arranged release for Company and the Kleins on their own recognizance. At trial, there was testimony that Antonelli arranged for Company to sell cocaine to a man identified as Alan Mayes to enable him to pay Antonelli his $500 retainer fee. There was also testimony that on the same day, Antonelli sold cocaine to defendants Brooks and Cunningham. Susan Reichard, Antonelli's girl friend and secretary, was present in Antonelli's apartment where the discussions and narcotics transactions took place. At trial, she testified, over objection, about the drug transactions that took place there on June 20, 1973.

On cross-examination it was shown that Reichard had been a paid government informant since March 1973. At this point, the district judge excused the jury and conducted an inquiry into the extent of the information obtained by the Government through its informant, Reichard. Agent McGann of the Drug Enforcement Administration testified that he had received a phone call from Reichard on July 18, 1973, in which she explained about the arrest of the Kleins and Company on June 20 on smuggling charges. She also indicated that Antonelli had made arrangements for Company to sell cocaine to Mayes and Brooks. During the course of the court's inquiry, it was shown that Miss Reichard customarily made notes of Antonelli's meetings with his

---

1. The Grand Jury indicted the following persons: Randall Company, Elmo Valencia, Patty Zeplin, Thomas Oxley, Daniel Everhart, Samuel Antonelli, Alan Mayes, Burton Brooks and Roman Cunningham.

2. After motions for severance had been denied, defendants Oxley and Everhart were convicted when they changed their pleas of not guilty to the superseding indictment to guilty and to nolo contendere. Defendants Zeplin, Mayes, Brooks and Cunningham had waived trial by jury, and the court tried them simultaneously with Company, Valencia and Antonelli, whose cases were presented to a jury.

clients and placed these notes in his files. It was also shown that on July 24, 1973, Reichard had shown two government agents some of attorney Antonelli's files, including a file on Randall Company. One of the agents admitted obtaining photocopies of materials from Antonelli's file on Company.

After hearing the testimony of government agents who obtained this information from Reichard, the district court ordered the jury to disregard all of Reichard's testimony, and then dismissed the indictment with respect to Antonelli, Brooks, Mayes and Cunningham. The district judge made this observation in concluding that the indictments against Mayes, Brooks and Cunningham should be dismissed:

> I am satisfied that so far as the Defendants Mayes, Brooks and Cunningham are concerned the Government would have no case whatever against them if they had not been engaging in this spying business, and so they did gain additional information, did confirm what they were suspecting and knowing, and it did enable them to have these three defendants indicted . . . . Certainly these three defendants are affected by the fruit of the poisonous tree, and as to them I can see no proper relief in law except a dismissal of the charges against them.

The district court was understandably outraged by Antonelli's involvement in a criminal conspiracy with his clients and branded him as being "beneath contempt." Nevertheless, he appropriately refused to permit "the law in its majesty . . . to be equally slimy" and reluctantly dismissed the charges against him.

However, with respect to Company, Valencia, and Zeplin, the district judge determined that the Government's case "probably [would] have developed about the same way it has developed" without Reichard's disclosure of privileged information to the authorities, and that the interests of justice would not be served by dismissing the charges against them. Accordingly, the trial proceeded against the three appellants, and was concluded when the jury returned

verdicts of guilty against Company and Valencia on all counts, and the judge, who had heard Zeplin's trial upon her waiver of a jury trial, determined that she was guilty.

This case presents difficult questions about the appropriate relief that should be granted where it has been shown that the Government, in an excess of zeal, improperly intruded into an attorney-client relationship and thereby obtained information about persons under investigation. Appellant Company contends that his Sixth Amendment right to effective assistance of counsel was violated by the government's intrusion into his relationship with his attorney. The other appellants contend that, although they did not have an attorney-client relationship with Antonelli, their convictions should also be reversed because the Government's improper intrusion tainted the prosecution against all defendants. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

■ As a preliminary matter the Government contends that no privileged attorney-client relationship existed between Company and Antonelli because the communications between them were for the purpose of committing or planning to commit a crime. *United States v. Hoffa*, 349 F.2d 20, 37 (6th Cir. 1965), aff'd, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). Although Antonelli was alleged to have participated in the sale of cocaine, nevertheless it is clear that he also had discussions with Company for the purpose of defending him on smuggling charges. The evidence reveals that Antonelli asked his secretary to make notes about these discussions, and that he represented Company at a bail hearing on the smuggling charges. These activities were all lawful and clearly fall within the ambit of the attorney-client privilege. Accordingly, we must hold that if the Government obtained information about Company's involvement in the smuggling offense as a result of its intrusion into the attorney-client relationship, Company's Sixth Amendment rights are implicated.

■ Valencia and Zeplin did not retain Antonelli as their attorney and accordingly,

they did not have an attorney-client relationship with him. Nevertheless, we hold under our supervisory authority over the conduct of federal prosecutions that they are entitled to the same relief that Company receives. If tainted information was used to convict appellants, they also are entitled to a new trial or dismissal of the indictment, whichever is appropriate under the circumstances.

The Government also contends that Company's Sixth Amendment rights were not violated because the government interference related to smuggling charges brought in Detroit (which were later dismissed) that were unrelated to the charges brought against him in Toledo. The Government contends that the Sixth Amendment right that Company asserts is a right limited to "government intrusions into the attorney-client relationship at the time of the trial . . . ." We do not view the dismissal of the smuggling charges as terminating Company's prosecution. The offenses with which he was charged and of which he was convicted appear to grow out of the same dealings that were the subject of the smuggling charges. In addition, we do not believe that the Sixth Amendment right to effective assistance of counsel is solely a trial right. In *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), the Supreme Court held that an accused was entitled to consult with his attorney at the time the investigative process became an accusatory process. That is the point at which Sixth Amendment rights are implicated and it certainly was reached in this case no later than the time of Company's arrest on June 20, 1973.

In *Manuel v. Salisbury*, 446 F.2d 453 (6th Cir. 1971), *cert. denied*, 405 U.S. 1046, 92 S.Ct. 1320, 31 L.Ed.2d 589 (1972), we considered whether a state prisoner had been denied effective assistance of counsel because his attorney was a member of a three-man law firm, and one of the other members of the firm later became a state prosecutor and assisted in the prosecution that resulted in his conviction for illegal possession and sale of narcotics. It was

petitioner-appellee's contention that communications about his case between his then defense attorney (who was replaced at trial by another attorney) and the state prosecutor deprived him of the effective assistance of counsel. Finding no evidence that appellee's attorney discussed the facts of the case with his partner, we determined that the district court erred in finding an impermissible conflict of interest that deprived appellee of the effective assistance of counsel. We indicated that: "The danger to be apprehended in the instant case is that Abrahamson [original defense counsel], having been entrusted by the Appellee with confidential information, intentionally or inadvertently disclosed all or part of it to Saeks [the attorney who became the prosecutor], who used it during the course of the prosecution. *While we do not doubt that such circumstances would warrant a grant of the writ*, we do not find them present on the record of this case." 446 F.2d at 455. [Emphasis added.] In this case, as well as in *Manuel*, the intrusion was before trial and the trial defense counsel was someone other than the attorney first contacted. And yet in *Manuel*, we indicated that relief would have been ordered if a violation of the type alleged had been shown. *See also Caldwell v. United States*, 92 U.S.App.D.C. 355, 205 F.2d 879 (1953). (Before trial, but while defendant was under indictment, the prosecutor hired a spy to find out who was "behind" defendant's offenses; *held*, a violation of defendant's Sixth Amendment rights.)

In *Manuel*, petitioner-appellee also made the claim that a police informer made false statements to his attorney at the behest of the police. We determined that no necessary inference of prejudice could be made since there was no contention that petitioner's attorney believed or acted upon the statement. Because the likelihood of prejudice was "sufficiently remote and speculative" (446 F.2d at 457), we remanded for an evidentiary hearing on that question. We later affirmed the district court's denial of the writ of habeas corpus. *Manuel v. Salisbury*, 497 F.2d 388 (6th Cir. 1974). And, of course, we are concerned here not only with

a Sixth Amendment constitutional contention, but also with the more comprehensive and less restricted supervision of federal criminal prosecutions to insure that they are conducted fairly and according to "civilized standards of procedure and evidence." *McNabb v. United States*, 318 U.S. 332, 340–41, 63 S.Ct. 608, 613, 87 L.Ed. 819 (1943).

We believe that Judge Young acted properly in dismissing the charges against Mayes, Brooks, Cunningham and Antonelli. Their participation in the crimes charged in the indictment appears to have been discovered in part through the information given by Susan Reichard. We agree with the district court that it was improper for the government to have intruded into an attorney-client relationship by paying an attorney's secretary for information about his clients. If any convictions here were affected by the taint of this highly irregular, and we trust, unusual arrangement, we would not hesitate to set aside the convictions.

■ However, as in *Manuel, supra*, we believe that no necessary inference of prejudice with respect to appellants can be made on the basis of the government's intrusion into the privileged relationship between attorney and client. The more recent authority indicates that there must be a showing of prejudice as well as a showing of an intrusion into the privileged relationship, *United States v. Rosner*, 485 F.2d 1213 (2nd Cir. 1973), *cert. denied*, 417 U.S. 950, 94 S.Ct. 3080, 41 L.Ed.2d 672 (1974); *United States v. Mosca*, 475 F.2d 1052 (2d Cir.), *cert. denied*, 412 U.S. 948, 93 S.Ct. 3003, 37 L.Ed.2d 1001 (1973); *South Dakota v. Long*, 465 F.2d 65 (8th Cir. 1972), *cert. denied*, 409 U.S. 1130, 93 S.Ct. 951, 35 L.Ed.2d 263 (1973); *People v. Pobliner*, 32 N.Y.2d 356, 345 N.Y.S.2d 482, 298 N.E.2d 637 (1973), although cases from the District of Columbia Circuit have indicated that a showing of a *gross* intrusion into the attorney-client relationship is sufficient to warrant a reversal of conviction and award of a new trial without a showing of prejudice. *Caldwell v. United States*, 92 U.S.App.D.C.

355, 205 F.2d 879 (1953); *United States v. Coplon*, 89 U.S.App.D.C. 103, 191 F.2d 749 (1951), *cert. denied*, 342 U.S. 926, 72 S.Ct. 363, 96 L.Ed. 690 (1952).

The district judge concluded that at the time of the Kleins' and Company's arrest on June 20, 1973, "the Government had a case that was ready to go." His statement suggests that the evidence used to convict appellants was not obtained by exploitation of the Government's intrusion but "instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963). However, we determine that the proper course is to remand this case to the district court to permit it to determine certainly whether any of the evidence produced against appellants (excluding Susan Reichard's stricken testimony) was obtained through Miss Reichard. We believe this is the best course of action to remove any question about the source of the evidence that was used at the trial, because there clearly has been an intrusion into the attorney-client relationship and because the defense attorneys were caught by surprise at the trial when Reichard's role as a paid government informant was discovered. We believe that the appellants should be given an opportunity, in light of the standards we enunciate here, to demonstrate whether any prejudice resulted from the government's misconduct. Although appellants must demonstrate that specific evidence used in the government's case against appellants was obtained through Miss Reichard, the Supreme Court makes clear that the ultimate burden is on the prosecution to demonstrate that the convictions were the result of untainted evidence. *See Alderman v. United States*, 394 U.S. 165, 183, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). In the remand, the Government will be obligated to disclose to appellants any records it has with respect to Miss Reichard's discussions about appellants.

The only evidence that should have been used to convict appellants was information that the Government obtained independently of and unrelated to Miss Reichard's dis-

**624**

closures. If the appellants demonstrate that tainted evidence was used at the trial and the Government fails to carry its burden that the evidence was untainted, the district court should order a new trial, at which the tainted evidence cannot be used. *See State v. Cory*, 62 Wash.2d 371, 382 P.2d 1019 (1963). *See also Hoffa v. United States*, 385 U.S. 293, 308, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); *Caldwell v. United States*, 92 U.S.App.D.C. 355, 205 F.2d 879, 881–82 n. 11 (1953).

With respect to appellant Zeplin's contention that there is insufficient evidence to convict her of the conspiracy count, we determine, after examining the testimony in the light most favorable to the government, that there is sufficient evidence (if it is found to be untainted) to support her conviction. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

The case is remanded for proceedings and findings consistent with this opinion, to determine the extent of the taint resulting from the improper prosecutorial tactics and the appropriate disposition. Jurisdiction is retained, but will be relinquished if the district court decides to grant a new trial or to dismiss the indictment.