John **BRIGGS**, et al., Appellants,

v.

**Guy GOODWIN, et al.**

No. 80–2269.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 26, 1981.

Decided Jan. 11, 1983.

As Amended Jan. 17, 1983.
Rehearing Granted March 25, 1983.

488

Nancy Stearns, New York City, with whom Morton Stavis, Doris Peterson, Philip J. Hirschkop and Jack Levine, New York City, were on the brief, for appellants.

Robert F. Muse, Washington, D.C., with whom Jacob A. Stein, Washington, D.C., was on the brief, for appellee.

Before MacKINNON and GINSBURG, Circuit Judges and BAZELON, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge BAZELON.

Dissenting opinion filed by Circuit Judge MacKINNON.

BAZELON, Senior Circuit Judge:

This civil suit arises out of criminal proceedings brought against appellants in 1972. Appellants[1] allege that Guy Goodwin, an attorney with the Department of Justice, misrepresented to them in open court that one of their comrades was not a government informant. They claim that this misrepresentation, which Goodwin left uncorrected, violated their Sixth Amendment right to the effective assistance of counsel because it led them to share various aspects of their defense with the informant. They seek both compensatory and punitive damages in a "*Bivens*-type" cause of action arising directly under the Constitution.

The district court granted summary judgment in favor of appellee, holding that he made his representation in good faith. We

---

1. There are twelve appellants in this action. Some of their claims are factually distinct. Neither side, however, relies on these distinctions at this stage in the proceedings. We, therefore, do not consider the importance of such differences. As a result, any reference hereafter to "appellants" or "plaintiffs" may or may not encompass all of the appellants. Further, we leave to the district court the application of this decision to individual appellants.

do not agree with the district court's conclusion that the good faith of the appellee presents no genuine issue as to any material fact. Nor can we accept the other grounds offered by appellee in support of affirmance; namely, that appellants' acquittal in their criminal trial negates any claim of a Sixth Amendment violation, and that appellants have not stated a valid cause of action within the contemplation of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1970).

## I. BACKGROUND

These are the facts read favorably for the appellants.[2]

On July 7, 1972, a grand jury in Tallahassee, Florida, subpoenaed appellants to testify concerning their activities in connection with the Vietnam Veterans Against the War (VVAW). The subpoenas were returnable 3 days later on July 10, 1972.[3] A group of lawyers hastily assembled to represent the subpoenaed witnesses. Because of the extreme time pressure involved the lawyers counselled many of the potential witnesses on a group basis.

Unknown to either the appellants or their lawyers, one of those subpoenaed, Emerson Poe, was a paid undercover FBI informant. The grand jury subpoenaed him in order to keep secret his status as an informant. Despite this status, Poe attended a group meeting of the plaintiffs and their lawyers on July 8, 1972, in preparation for the grand jury. He also signed a retainer form with appellants' attorneys, though the scope of that retainer is unclear. Throughout the grand jury proceedings, Poe consulted with appellants' lawyers and was present in the cramped hallway where the appellants also consulted with their lawyers.[4]

Recurring rumors of police and FBI infiltration of VVAW prompted concern among the appellants that informants might be in their midst. Group counsel filed a motion with the district court to discover whether any of the witnesses represented by them were government informants. To clarify that motion, the district court requested that counsel list the witnesses in question and their respective attorneys. On July 12, that list was presented orally on the record before the court. Emerson Poe was among the names listed. During discussion of the motion the next day, the court peremptorily directed Goodwin to take the stand and be sworn. He was asked one question:

> THE COURT: Mr. Goodwin, are any of these witnesses represented by counsel agents or informants of the United States of America?
>
> THE WITNESS [GUY GOODWIN]: No, Your Honor.

---

**2.** While courts should be vigilant to dispose of non-meritorious claims at the pretrial stage, *see Harlow v. Fitzgerald*, —— U.S. ——, ——, 102 S.Ct. 2727, 2731, 73 L.Ed.2d 396 (1982); *Butz v. Economou*, 438 U.S. 478, 507–08, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978), the rules governing summary judgment in cases involving officials claiming a qualified immunity do not differ from those applicable in other contexts. *See Halperin v. Kissinger*, 606 F.2d 1192, 1209 (D.C.Cir.1979); *Apton v. Wilson*, 506 F.2d 83, 94–95 (D.C.Cir.1974). *But see Halperin v. Kissinger*, 606 F.2d at 1214 (Gesell, J., concurring).

Summary judgment is to be granted only if there are no material facts at issue and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. This does not mean that summary judgment may be opposed by mere protestations that the facts are different or in dispute. Fed.R.Civ.P. 56(e); *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–90, 88 S.Ct. 1575, 1592–1593,

20 L.Ed.2d 569 (1968). Instead, the party opposing summary judgment generally must present affidavits, depositions, answers to interrogatories, or admissions which set forth the disputed facts in such a form as would be admissible as evidence. *Id.*

**3.** July 10, 1972, was the first day of the Democratic National Convention in Miami Beach, Florida. Appellants had parade permits for a protest march at the Convention on that day. They could not use these permits because of the appellants' compelled attendance at the grand jury. In an earlier case, appellants' claim was rejected that the timing of the subpoenas and the grand jury proceedings violated their First Amendment rights. *Beverly v. United States*, 468 F.2d 732, 747–49 (5th Cir.1972).

**4.** The grand jury asked Poe only his name and address. Several other subpoenaed witnesses also received only cursory examination.

490

Goodwin knew at the time that Poe was an FBI informant. He also had the opportunity to see Poe among the plaintiffs and their attorneys as they waited in the hall outside of the grand jury room. On the other hand, Goodwin claims to have issued instructions that Poe was not to become involved with the appellants' defense efforts or their attorneys. In addition, the record reveals possible confusion over whether or not Poe was one of the witnesses covered by the judge's question.[5]

Later that day, the grand jury indicted six of the appellants on federal criminal charges relating to an alleged conspiracy to cross state lines to instigate a riot.[6] Two other appellants were subsequently indicted on the same charges. The grand jury granted the remaining four appellants immunity; when they refused to testify, they were convicted of contempt.[7] Poe was not indicted on any charge.

Shortly after the grand jury proceeding, Poe, at the behest of the FBI, retained a local lawyer to inform appellants' attorneys that he would be representing Poe in any further proceedings. Nonetheless, the appellants continued to take Poe into their confidence and discuss aspects of the upcoming trial with him. Poe attended a number of meetings among appellants at which they discussed defense matters. Appellants' attorneys were sometimes present. On at least one occasion, appellants questioned Poe's presence at these meetings because he was not an actual defendant.

Despite renewed instructions scrupulously to avoid "invading" the defense camp, Poe reported to the FBI regarding his attendance at meetings, his other involvement with the appellants, and the information he acquired. The FBI routinely passed such information on to the Justice Department. Among the information that Poe provided the FBI was information concerning the severe financial impact of a pending motion on the defense team; the intention of one of the appellants to visit a potential witness for the government; friction among members of the defense team; and a jury-selection survey being conducted by the defense. Poe agreed to help appellants collect information for the survey, but he failed to do so or reported false information.

On August 17, 1973, pursuant to the Jencks Act,[8] appellants obtained written materials revealing Poe's informant status. At a pretrial hearing in their criminal prosecution, the indicted appellants succeeded in suppressing certain evidence discovered by Poe and turned over to the FBI.[9] The court held that the means used to gather the evidence violated the Sixth Amendment.[10] At trial, the jury acquitted plaintiffs of all charges.

Appellants brought this action alleging that Goodwin violated their Sixth Amendment rights both directly through his misleading statement on witness informants and indirectly through his failure to remedy the situation when it became apparent that Poe was gathering confidential defense information and reporting it to the FBI.[11]

5. J.A. at 604–610.

6. For a complete enumeration of the charges, see Beverly v. United States, 468 F.2d at 732, 757 n. 9.

7. These convictions were subsequently overturned on unrelated grounds. Beverly v. United States, 468 F.2d 732 (5th Cir.1972).

8. 18 U.S.C. § 3500 (1976).

9. United States v. Briggs, No. 73–1353, Tr. at 281–82; J.A. at 680–81 (N.D.Fla. Aug. 17, 1973).

10. The court found the means used for obtaining the evidence inconsistent with the mandate of Massiah v. United States, 377 U.S. 201, 84

S.Ct. 1199, 12 L.Ed.2d 246 (1964) (surreptitious interrogation of criminal defendants violates Sixth Amendment). See also United States v. Henry, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980) (admission of evidence gathered by government informant planted in jail violates sixth amendment).

11. Plaintiffs initially also sued two other attorneys for the United States, William Stafford and Stuart Carrouth, and an FBI agent, Claude Meadow, who were involved in the investigation, indictment and criminal trial. The complaints against Stuart, Carrouth, and Meadow were dismissed for improper venue. Stafford v. Briggs, 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980).

Goodwin moved for dismissal of the complaint, arguing that as a public prosecutor he was entitled to absolute immunity from private damage suits for actions taken in his official capacity. He also claimed that his statement was made while a "witness" in court, and that he should be entitled to absolute witness immunity. Both the district court and a panel of this court denied a motion to dismiss on either of these immunity grounds.[12] Instead, we determined that Goodwin was only entitled to a qualified immunity; he would be protected from private suit only if his actions were taken in good faith.[13]

On remand, Goodwin moved for summary judgment. The district court rejected a renewed claim of absolute immunity, but granted summary judgment on a finding that Goodwin had established his good faith because he "in fact believed in the veracity of his statement" concerning informants represented by common counsel.[14] In this appeal, appellants contend that material issues of fact remain in dispute. Goodwin disagrees and offers several other grounds for affirming summary judgment.

## II. DISCUSSION

### A. The Grant of Summary Judgment

■ In granting summary judgment, the district judge relied heavily on the deposition testimony of Goodwin, Poe, and other government officers associated with the case. That evidence supports Goodwin's claim that he instructed Poe not to join in the appellants' defense. It also suggests that Goodwin believed that Poe was not included in the class of persons whom he stated were not government informants. Appellants contend that this evidence does not settle all disputes over material facts. We agree.

In *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), the Court described the qualified immunity as follows: "It is the reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief, that affords a basis for qualified immunity." *Id.* at 247–48, 94 S.Ct. at 1691–1692. The test is an objective one, *see Harlow v. Fitzgerald,* —— U.S. ——, ——, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), focusing on whether the official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate[ ] constitutional rights." *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975). In the instant case, appellants contend that Goodwin knew that his statement was false or misleading, and that even if he believed the truth of his statement, such a belief was unreasonable. They further contend that in light of Poe's continuing reports to the FBI on defense plans and concerns, Goodwin unreasonably failed, after July 13, to correct or clarify his sworn statement.

■ Judges and juries have specialized functions in cases in which negligence (what appellee should have shown) or state of mind (what appellee actually knew) is in issue.[15] Our judicial system relies on the competence of juries to apply standards of reasonableness to particular fact situations and to make determinations of the state of mind of parties in light of the circumstances surrounding an action. Summary judgment should be granted on such issues only when they are so clear that a judge can decide them as a matter of law. This degree of clarity is not present here.

12. *Briggs v. Goodwin,* 384 F.Supp. 1228, 1230 (D.D.C.1974); *Briggs v. Goodwin,* 569 F.2d 10 (D.C.Cir.1977), *cert. denied,* 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978) [hereinafter referred to as *Briggs I*]. That case was heard on interlocutory appeal under 28 U.S.C. § 1292(b) (1976). While only the issue of prosecutorial immunity was certified for appeal in *Briggs I,* the opinion reached the issue of witness immunity in the interest of judicial economy. 569 F.2d at 25–28; *see also id.* at 26 n. 14

(dissenting from view that witness immunity issue was properly before the court).

13. *Briggs v. Goodwin,* 569 F.2d at 16, 25.

14. *Briggs v. Goodwin,* No. 74–803, slip op. at 4 (D.D.C. Sept. 19, 1980).

15. *See* 10 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE §§ 2729, 2730 (1973).

There is, for example, some conflict between the depositions of Goodwin and FBI agent Pence. Pence maintains that prior to July 13, he told Goodwin that informant Poe had received instructions to consult with the defense attorneys for the VVAW members on the same basis as the other witnesses (Pence Dep. 25–6, J.A. pp. 229–30). Goodwin maintains that he did not learn of these instructions until after he made his statement (Goodwin Dep. p. 54, J.A. p. 204). Both depositions agree that Goodwin objected to those instructions. According to the Pence version, however, a jury might conclude that Goodwin had reason to suspect that Poe was not obeying earlier instructions to avoid getting involved in the defense of the other witnesses. A jury could find this discrepancy important in determining whether Goodwin actually believed the truth of his statement and whether such a belief was reasonable.

■ More important, however, the district court granted summary judgment based entirely on appellee's good faith belief at the time of making his statement on July 13. This view of good faith is too

narrow. If, at some time after making his statement before the court, Goodwin knew or reasonably should have known that it was either false or had been misleading, he had an obligation to correct or clarify his statement for those that it had misled.[16]

■ In defining the requirements of good faith this way, we find instructive the principles of the common law governing torts such as misrepresentation and deceit. Those principles impose a duty on an individual who makes a statement to clarify that statement to those justifiably relying on it if he later learns that his original statement was false or misleading.[17] Such a duty can arise even though the statement is literally true if it is ambiguous enough to be misinterpreted. The test is the effect that the statement would have "on the ordinary mind."[18] These common law tort principles do not control constitutional torts because such actions are governed by federal common law.[19] But traditional common law torts do provide a background from which to draw analogies,[20] and we find them relevant in this situation.

---

**16.** In *Briggs I* we held that Goodwin's "protection from liability depends upon a showing that he entertained a good-faith, reasonable belief in the truth of his response to the federal district judge in Florida." *Briggs v. Goodwin,* 569 F.2d at 16. Thereafter, in granting summary judgment, it appears that the district court interpreted this language too narrowly. Our earlier opinion concerned only Goodwin's claim of absolute immunity regarding his statement on July 13. In rejecting that claim, the precise contours of the qualified immunity were not an issue before the court, and were not part of our *ratio decidendi.* That opinion was not, nor was it intended to be, an exhaustive description of the good faith immunity. Nothing in that opinion conflicts with or precludes the requirement of good faith that we describe today. Nor is this opinion a definitive work on good faith immunity; additional refinements may become necessary as the facts in this case develop. Based on the allegations and the facts as developed thus far, we find merely that the appellants' right to rely on Goodwin's statement imposed the duty on him to clarify or correct his statement as described above.

**17.** *See* PROSSER, LAW OF TORTS § 106 at 695–97 (1977). *Cf. also* RESTATEMENT (SECOND) OF TORTS § 551(2)(c) (1977) (liability for nondisclosure in business transactions); *Monroe v. Pape,* 365

U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961) (incorporating tort rule that imposes liability "for the natural consequences of [a defendant's] actions").

**18.** *See* PROSSER, LAW OF TORTS § 106 at 695 (1977).

**19.** *See Carlson v. Green,* 446 U.S. 14, 23, 100 S.Ct. 1468, 1474, 64 L.Ed.2d 15 (1980); *Burks v. Lasker,* 441 U.S. 471, 476, 99 S.Ct. 1831, 1836, 60 L.Ed.2d 404 (1979).

**20.** Federal courts have frequently used the common law background of torts to fill in gaps in the development of constitutional torts. In *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the Court referred to "the background of tort liability" against which section 1979 should be interpreted. *Id.* at 187, 81 S.Ct. at 484. In *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), the Court relied on this reference, along with general common-law sources such as treatises and state law cases, to extend the common-law defenses of good faith and probable cause to Jackson, Mississippi, police officers sued for unconstitutional arrests. *Id.* at 555–57, 87 S.Ct. at 1218–1219. In other situations, courts have relied on the common law to provide

In the instant case, appellants clearly had a right to rely on Goodwin's statement—it was a statement under oath made specifically for their benefit. It also appears that the appellants would not have trusted Poe but for their belief that he was not an informant. For the purposes of summary judgment, we can also assume that this belief was based on Goodwin's representation to the district court. Goodwin's representation and his failure to correct any misimpression that he may have created may thus have occasioned the Sixth Amendment violation and consequent injury appellants assert. If Goodwin knew or should reasonably have foreseen that his statement had misled appellants in the manner they allege, his failure to apprise appellants and the court of the full truth about Poe would preclude successful invocation of a good faith immunity defense. Thus, the facts necessary to grant appellee summary judgment have not been established and we must reverse the decision of the district court.

■ Appellee, however, offers alternative bases on which he contends summary judgment should be affirmed. When reviewing a grant of summary judgment, it is within the proper discretion of an appellate court to affirm on a basis other than that relied upon by the district court. After careful consideration of the arguments put forth by appellee, we reject them all. But because the law of constitutional torts and of the Sixth Amendment are both experiencing rapid growth and considerable confusion, the legal theories advanced by the appellee merit discussion.

## B.  Sixth Amendment Violations

■ In *Weatherford v. Bursey,* [21] the Supreme Court held that a threat of significant harm to the defendant was a necessary component of a nondeliberate violation of the Sixth Amendment.[22] Mere attendance by an undercover agent at a meeting with the criminal defendant and his attorney does not constitute a Sixth Amendment violation as long as the agent communicates nothing of what he learns to his superiors and does not testify as to the content of the conversation.[23] In the instant case, appel-

guidance in establishing constitutional tort principles concerning issues such as the defendants' state of mind, *see generally* Kirkpatrick, *Defining a Constitutional Tort Under Section 1983: The State of Mind Requirement,* 46 U.Cin.L.Rev. 45 (1977), causation, and the magnitude of injury necessary to accord compensation. *See Carey v. Piphus,* 435 U.S. 247, 255–56 & nn. 7, 9, 98 S.Ct. 1042, 1047–1048 & nn. 7, 9, 55 L.Ed.2d 252 (1978) (citing tort treatises to support the causation requirement imposed upon plaintiff); *see* Whitman, *Constitutional Torts,* 79 Mich.L.Rev. 5, 14–21 (1980).

**21.** 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977).

**22.** A deliberate attempt by the government to obtain defense strategy information or to otherwise interfere with the attorney-defendant relationship through the use of an undercover agent may constitute a *per se* violation of the Sixth Amendment. *United States v. Morrison,* 602 F.2d 529, 531–32 (3d Cir.1979), *rev'd on other grounds,* 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981); *cf. Weatherford v. Bursey,* 429 U.S. at 557, 558, 97 S.Ct. at 844–845 (noting lack of purposeful state intrusion); *Klein v. Smith,* 559 F.2d 189, 197–200 (2d Cir.1977) (discussing but not deciding whether intentional intrusion constitutes a *per se* violation). *But*

see *United States v. Glover,* 596 F.2d 857, 863–64 & n. 10 (9th Cir.1979).

**23.** 429 U.S. at 554, 97 S.Ct. at 843.

Judge MacKinnon's reliance on *Weatherford* to require a dismissal of this case is unwarranted. *Weatherford* involved a meeting between a lawyer and his client in the presence of a government informant. The informant attended the meeting at the client's request in order to avoid raising suspicions concerning his informant status. He did *not* provide the prosecution with any information concerning the client's defense. The Court explicitly relied on that fact to hold that no Sixth Amendment violation had occurred, *id.* at 556, 97 S.Ct. at 844, and added that "had the prosecution learned from [the agent] the details of the [lawyer-client] conversations, [the respondent] would have a much stronger case." *Id.* at 554, 97 S.Ct. at 843. In the instant case, appellants have demonstrated that the informant may have passed information concerning their case to the prosecution. Thus, this case presents a question that *Weatherford* explicitly left unanswered and described as a "much stronger" claim.

The dissent maintains that this distinction of *Weatherford* is contradicted by the record. Specifically, Judge MacKinnon relies on the

lee relies on the fact that appellants were all acquitted, and contends that therefore no violation of the Sixth Amendment occurred.[24]

The threat of significant harm required by *Weatherford* does not, however, have to amount to "prejudice" in the sense of altering the actual outcome of the trial.[25] Although the Sixth Amendment is concerned primarily with fairness at trial, it is not limited to that function.[26] The right to counsel protects the whole range of the accused's interests implicated by a criminal prosecution. These interests may extend beyond the wish for exoneration to include, for example, the possibilities of a lesser charge, a lighter sentence, or the alleviation of "the practical burdens of a trial." [27]

In *Weatherford*, the intrusion imposed no additional effort or burden on the defense, as the informant did not turn over any evidence to the prosecution. In the instant case, the evidence gathered by Poe could have been used against the appellants if they had not challenged it. Moreover, the appellants need not prove that the prosecution actually used the information obtained. The prosecution makes a host of discretionary and judgmental decisions in preparing its case. It would be virtually impossible for an appellant or a court to sort out how any particular piece of information in the possession of the prosecution was consciously or subconsciously factored into each of those decisions. Mere possession by the prosecution of otherwise confi-

district court's finding that "Goodwin was not privy to [defense strategy] information when he made his assertion to Judge Middlebrooks." This finding, however, relates only to Goodwin's knowledge *at the time* of his statement before the grand jury. Sixth Amendment protections are implicated whenever the prosecution improperly obtains defense strategy information in a criminal proceeding. Appellants have pointed to circumstances suggesting that *after* Goodwin's statement before the grand jury, Poe obtained such information and passed it on to the FBI, which forwarded it to Goodwin. (Appellant's Brief at 20–23; Pence Dep. pp. 11–14) Interpreting those circumstances as we must on summary judgment, this case is clearly not appropriate for dismissal under *Weatherford.*

Finally, Judge MacKinnon is factually incorrect in asserting that the record "does not contain a shred of specific evidence that Goodwin *actually* received" the information sent by the FBI to the Justice Department. Deposition testimony by FBI agent Pence, who supervised FBI activities in this case, states explicitly that his contact at the Justice Department, to whom he sent all information, was appellee Goodwin. Pence Dep. at 12–14, 40–41, J.A. at 224–26, 232–33. Moreover, even in the absence of this specific evidence, Judge MacKinnon's assertion once again ignores that on summary judgment all inferences are to be drawn in favor of the appellant. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Where information bearing on a pending case is sent to the Justice Department, it is hardly a great leap of faith to infer that it "actually" reached the prosecutors in the case.

**24.** In a slightly different argument, appellee contends that because of appellants' acquittal on criminal charges, appellants can show no damages or cannot prove the actual amount of

any damages they suffered even if a Sixth Amendment violation occurred. We agree that the injuries allegedly suffered by appellants may be intangible and elusive. We also agree that appellants may have a difficult time proving actual "damages" in the tort sense, and that such proof is necessary for them to recover a compensatory award. *Carey v. Piphus,* 435 U.S. 247, 257–65, 98 S.Ct. 1042, 1048–1053, 55 L.Ed.2d 252 (1978). Nevertheless, they should be given an opportunity to do so. Moreover, a cause of action arising from the violation of the appellants' constitutional rights is "actionable for nominal damages without proof of actual injury." *Id.* at 266, 98 S.Ct. at 1053; *see also Basista v. Weir,* 340 F.2d 74 (3d Cir.1965).

**25.** *Cf. United States v. Morrison,* 449 U.S. 361, 367, 101 S.Ct. 665, 669, 66 L.Ed.2d 564 (1981) (implying possible civil damage action when Sixth Amendment violation does not alter overall fairness of criminal trial).

**26.** *See Miranda v. Arizona,* 384 U.S. 436, 465–66, 86 S.Ct. 1602, 1623, 16 L.Ed.2d 694 (1966) (counsel ensures fair treatment by government officials); *Escobedo v. Illinois,* 378 U.S. 478, 486–87, 84 S.Ct. 1758, 1762–1763, 12 L.Ed.2d 977 (1964) (same); *United States v. Valencia,* 541 F.2d 618, 622 (6th Cir.1976); *Fitzgerald v. Estelle,* 505 F.2d 1334, 1337–38 (5th Cir.1974) (en banc), *cert. denied,* 422 U.S. 1011, 95 S.Ct. 2636, 45 L.Ed.2d 675 (1975).

**27.** *Brady v. United States,* 397 U.S. 742, 751–52, 90 S.Ct. 1463, 1470–1471, 25 L.Ed.2d 747 (1970); *see also Tollett v. Henderson,* 411 U.S. 258, 267–68, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973).

dential knowledge about the defense's strategy or position is sufficient in itself to establish detriment to the criminal defendant. Such information is "inherently detrimental, ... unfairly advantage[s] the prosecution, and threaten[s] to subvert the adversary system of criminal justice."[28] Further, once the investigatory arm of the government has obtained information, that information may reasonably be assumed to have been passed on to other governmental organs responsible for prosecution. Such a presumption merely reflects the normal high level of formal and informal cooperation which exists between the two arms of the executive.[29]

■ Appellants contend that Poe's continued status after their indictment as both a secret FBI informant and as their confidant obstructed their counsel's efforts to gain expeditious and economical dismissal of the criminal charges they faced. FBI documents show that Poe informed the FBI of the appellants' efforts to contact a potential witness; the financial difficulties of the defense team, particularly regarding the adverse financial impact of a particular venue motion; and the existence of a jury selection survey.[30] Moreover, there is evidence that the FBI routinely passed information received from Poe to the Department of Justice and attorneys involved in this case.[31] Such information would undoubtedly have been of interest to a prosecuting team planning its strategy. Thus, the record suggests a realistic possibility that appellants suffered injury as a result of governmental intrusions in violation of the Sixth Amendment.

## C. The Appropriateness of a Bivens-Type Action

When this case was before this court on interlocutory appeal concerning appellee's claim of immunity, we confined our decision to the narrow question of immunity that was before us.[32] In so doing, we explicitly avoided the question of when and whether *Bivens* establishes a cause of action for violations of the Sixth Amendment, as distinct from Fourth Amendment violations which were at issue in *Bivens.* Such caution was warranted because the scope of the *Bivens* cause of action had produced sharp conflict among the circuits.[33]

28. *Weatherford v. Bursey,* 429 U.S. at 556, 97 S.Ct. at 844.

29. *See United States v. Morrison,* 602 F.2d 529, 536 (3d Cir.), *rev'd on other grounds,* 449 U.S. 361, 101 S.Ct. 1420, 67 L.Ed.2d 385 (1980); *see also United States v. Levy,* 577 F.2d 200, 210 (3d Cir.1978); *cf. United States v. Natale,* 494 F.Supp. 1114, 1124–25 (E.D.Pa.1979) (detailed "chinese wall" procedures prevented prosecuting team from obtaining prohibited information from investigators). The government is, of course, free to rebut this presumption, by showing, for example, procedures in place to prevent such intragovernmental communications.

30. Joint Appendix at 84–85, 118–19, 126. Goodwin's reliance on *United States v. Kilrain,* 566 F.2d 979 (5th Cir.1978), and *Klein v. Smith,* 559 F.2d 189 (2d Cir.1977), is therefore misplaced. In both those cases there were *factual* findings by the trial court that *no* strategy information was passed on to the government.

31. Joint Appendix at 222–26, 232–33. We are not without solicitude for the government's dilemma. The government may have legitimate reasons, such as maintaining an individual's cover or continuing an ongoing investigation, to keep an informant in a position where he or she necessarily receives a continuous flow of information thought by the defense to be confidential strategy. The proper course, however, is not for courts to excuse government intrusion in these circumstances, but for the government to ensure that no harm to the defendant's cause—and thus no Sixth Amendment violation—flows from the intrusion. *See* pp. 493–494.

32. *Briggs v. Goodwin,* 569 F.2d 10 (D.C.Cir. 1977).

33. Several Courts had apparently concluded that *Bivens* established a cause of action for damages arising from the violation of any constitutional right by a federal official. *See, e.g., Paton v. La Prade,* 524 F.2d 862 (3d Cir.1975); *Yiamouyiannis v. Chemical Abstracts Service,* 521 F.2d 1392 (6th Cir.1975); *States Marine Lines, Inc. v. Shultz,* 498 F.2d 1146 (4th Cir. 1974); *United States ex rel. Moore v. Koelzer,* 457 F.2d 892 (3d Cir.1972); *Gardels v. Murphy,* 377 F.Supp. 1389 (N.D.Ill.1974); and *Butler v. United States,* 365 F.Supp. 1035 (D.Haw.1973). Other courts had read the leading case more narrowly, restricting its sway to Fourth Amendment transgressions like that actually

We find it conceptually awkward to continue our avoidance of that issue in the present posture of this case. Appellee contends that we should affirm summary judgment because appellants have failed to state a valid cause of action under *Bivens.* A decision on that issue seems necessary prior to a decision on whether an individual enjoys an immunity to that cause of action. Moreover, in the few years since our last opinion in this case, several Supreme Court opinions have provided some clarity in this area. As a consequence, the need to proceed with such caution has diminished.

■ In *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), the Court upheld a cause of action brought by a woman against a Congressman who allegedly engaged in sex discrimination in a staff employment decision. By relying on *Bivens,* despite the fact that the right asserted was protected by the Fifth Amendment, the Court made clear that the *Bivens* holding was not limited to violations of the Fourth Amendment. In *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), the Court expanded the law created by *Bivens* and *Davis* still further. A mother sued for damages allegedly caused by federal prison officials' violation of her deceased son's constitutional rights protected by the Eighth Amendment. The Court held that a tort remedy was "available directly under the Constitution," even though the allegations could also support a suit under the Federal Tort Claims Act. That holding made clear that a *Bivens*-type suit can exist even where other remedies are available. The Court interpreted the *Bivens* holding in a sweeping manner:

> *Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a

right. Such a cause of action may be defeated in a particular case, however, in two situations. The first is when defendants demonstrate "special factors counselling hesitation in the absence of affirmative action by Congress." 403 U.S., at 396 [91 S.Ct., at 2004]; *Davis v. Passman,* 442 U.S. 228, 245 [99 S.Ct. 2264, 2277, 60 L.Ed.2d 846] (1979). The second is when defendants show that Congress has provided an alternative remedy which it explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective. *Bivens, supra* [403 U.S.] at 397 [91 S.Ct. at 2005]; *Davis v. Passman, supra* [442 U.S.] at 245–247 [99 S.Ct. at 2277–2278].

446 U.S. at 18–19, 100 S.Ct. at 1471 (emphasis in original).

By saying that the cause of action may be defeated "in two situations," the Court implied that it may not be defeated in other situations. Appellee in this case has not, thus far, demonstrated that either of these situations obtains in the instant case. He has not shown an alternate remedy that Congress has explicitly labelled as a substitute for a *Bivens* action. Nor has appellee identified "special factors counselling hesitation." Appellee contends that, as prosecutor, he needs absolute immunity from such cases, but this claim was fully considered by this court before. In that decision, we determined that the requirements of Goodwin's job justified only a qualified immunity, an immunity that depended on the good faith of his actions.

■ Thus, we see no apparent reason why the Sixth Amendment rights in this case ought to be treated differently from the Fourth Amendment rights at issue in *Bivens,* the Fifth Amendment rights at issue in *Davis v. Passman,* or the Eighth Amendment rights at issue in *Carlson v. Green.* In addition, the damage remedy provided by a *Bivens*-type suit is appropri-

treated by the Supreme Court in *Bivens. See, e.g., Moore v. Schlesinger,* 384 F.Supp. 163, 165 (D.Colo.1974), *aff'd by unpub. opinion* (10th Cir.1975), *cert. denied,* 425 U.S. 958, 96 S.Ct. 1738, 48 L.Ed.2d 203 (1976); and *Davidson v. Kane,* 337 F.Supp. 922, 924 (E.D.Va.1972). Several tribunals had noted the issue, but re-

served decision. *See, e.g., Holodnak v. Avco Corp.,* 514 F.2d 285, 292 (2d Cir.), *cert. denied,* 423 U.S. 892, 96 S.Ct. 188, 46 L.Ed.2d 123 (1975), and *Wahba v. New York University,* 492 F.2d 96, 103–04 (2d Cir.), *cert. denied,* 419 U.S. 874, 95 S.Ct. 135, 42 L.Ed.2d 113 (1974).

ate in this context. Damages are a traditional remedy for unwarranted harm resulting from the judicial process; the *Bivens*-type action involved here is analogous to tort actions for false imprisonment, malicious prosecution, and abuse of process. Moreover, alternative remedies are often unavailable for violation of Sixth Amendment rights. An exclusionary rule may provide prospective relief in some cases, but does not offer any compensatory relief. Appellate review of convictions provides no relief for those who would have been convicted in spite of the Sixth Amendment violation, for those who are acquitted, and for those who are never even taken to trial but who are nonetheless dragged through the early stages of the criminal process. The vindication of Sixth Amendment rights to the effective assistance of counsel for such persons will depend solely on the availability of a damage remedy. For such persons "the 'exclusionary rule' is simply irrelevant[;] [f]or people in [their] shoes, it is damages or nothing." [34]

### CONCLUSION

We have only examined the record to see if appellants have raised material disputes

over factual or inferential issues. We have concluded, contrary to the district court, that the appellants have pointed to evidence that establishes a genuine contest on the issue of appellee's good faith. We also cannot find any other basis on which to affirm summary judgment. Appellants have demonstrated a possible Sixth Amendment violation and the possible liability of Goodwin. They should be allowed to proceed to trial.

*Reversed and remanded for further proceedings consistent with this opinion.*

MacKINNON, Circuit Judge (dissenting).

In my opinion the summary judgment of the district court should be affirmed. For reasons set forth in Judge Wilkey's dissent in *Briggs I (Briggs v. Goodwin),* 569 F.2d 10, 46–61 (D.C.Cir.1977), *cert. denied,* 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978), I would rule that Goodwin was entitled to complete immunity as a witness. Moreover, appellants' claims should be dismissed under *Weatherford v. Bursey,* 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977) [1] (an undercover agent's knowledge of de-

---

**34.** *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 410, 91 S.Ct. 1999, 2011, 29 L.Ed.2d 619 (1971) (Harlan, J., concurring).

**1.** The attempt of the majority in its footnote 23 to distinguish *Weatherford* is contradicted by the record. It rests on the unsubstantiated assumption that information on defense strategies passed to the FBI, and thence "routinely" to the Justice Department, *see* majority op. at 493, *necessarily* made its way to *Goodwin* himself. But the Department of Justice is a very large organization and the trial court specifically found that

> the evidence supporting plaintiffs' assertion that Poe was cognizant of some defense strategy also indicates that *Goodwin was not privy to this information when he made his assertion to Judge Middlebrooks.* Finally, *the assertions of defense counsel on July 12th indicating that Poe was not being represented supported Goodwin's belief that Poe was in fact not represented by counsel.* [JA 605.] It is clear that Goodwin did not perjure himself on July 13, 1972.

(JA 5) (emphasis added).

Since the suit against Goodwin turns on allegations that *he* was privy to the information

when testifying, summary judgment was appropriate because there was no showing that a genuine issue of material fact remained as to whether appellants' Sixth Amendment rights had been violated by that testimony.

As for the claim that appellants' Sixth Amendment rights were violated by Goodwin's failure to advise them of subsequent information allegedly received concerning informants, the record does not contain a shred of specific evidence that Goodwin *actually* received such information. If the prosecutor did not receive such information, the defendants were not harmed. The majority refers, however, to the deposition testimony of FBI agent Pence, who stated that he routinely passed on all information to Goodwin. Majority op. at n. 23. But the gap between routine distribution and actual receipt of specific reports can only be bridged by speculation. While "inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing [a summary judgment] motion," *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam), the majority confuses inference with speculation.

fense discussions that is not communicated to the prosecutor does not violate any constitutional right of the defendant). I thus dissent.

In addition, I am also unable to agree with this court's earlier decision that ruled Goodwin was not entitled to prosecutorial immunity. *Briggs v. Goodwin, supra.* As an employee of the Department of Justice, he was designated by the Attorney General to prosecute the case, and that constituted his entire authority. Our earlier decision fails to recognize the normal obligations of a prosecutor and draws an overly fine distinction in artifically bifurcating his role into "advocate" and "investigator" for the purpose of deciding whether immunity should attach.