UNITED STATES of America,

v.

The LaROUCHE CAMPAIGN, Independent Democrats for LaRouche, Michael Gelber, Richard Sanders, Charles Park, Michael Billington, Paul Goldstein, Jeffrey Steinberg, Michelle Steinberg, Roy Frankhauser, a/k/a Bill Clay, Elliott Greenspan, Caucus Distributors, Inc., Richard Black, Campaigner Publications, Inc., National Caucus of Labor Committees, Edward Spannaus, John Scialdone, and Robert Greenberg, Defendants.

Crim. No. 86–323–K.

United States District Court,
D. Massachusetts.

July 16, 1987.

---

John Markham, Boston, Mass., Mark D. Rasch, for the U.S.

Michael Reilly, Paul A. Devlin, Haussermann, Davison & Shattuck, Odin Anderson, Robert Rossi, Thomas G. Shapiro, Rikki Klieman, Owen Walker, Federal Defender's Office, Matthew Feinberg, James E. McCall, Boston, Mass., Edward J. McCormick, III, Norfolk, Mass., Daniel S. Alcorn, Arlington, Va., William B. Moffitt, William B. Cummings, Alexandria, Va., John A. Baccari, Wakefield, Mass., Mayer Morganroth, Southfield, Mich., Robert F. Collins, Braintree, Mass., for defendants.

## MEMORANDUM AND ORDER

KEETON, District Judge.

On May 14, 1987, the defendants (other than Frankhauser) who were charged in the first superseding indictment filed a Motion to Dismiss Based on Governmental Misconduct and Interference with Defendants' Right to Counsel (Motion/Docket No. 245/577) and requested an evidentiary hearing in relation to issues allegedly bearing upon the motion.

Also pending before the court are these defendants' requests for evidentiary hearings in relation to other pending pre-trial motions, including Motion of Edward Spannaus To Suppress Evidence (Motion/Docket No. 66/264); Supplemental Motion To Suppress Of Robert Greenberg (Motion/Docket No. 204/437); Combined Motion To Suppress (Motion/Docket No. 151/377); Motion To Stay Bankruptcy Proceedings (Motion/Docket No. 241/538); Motion To Dismiss for Violation of the Sixth Amendment (Motion/Docket No. 240/537); and Motion for an Evidentiary Hearing of Paul Goldstein (filed May 18, 1987).

Other requests for evidentiary hearings made in association with other motions to suppress and motions to dismiss on grounds of alleged selective and vindictive prosecution and grand jury abuse were denied in the Memoranda and Orders of June 8, June 12, June 24, and July 9, 1987.

The final rulings on the motions still pending depend in part upon what legal rules and standards are to be applied in determining whether to allow defense requests for evidentiary hearings before deciding pre-trial motions in criminal proceedings. Special problems are presented when

the proposed scope of the hearings extends to cross-examination of government agents and attorneys about their motives or intent. These basic legal issues are addressed in Parts II–IV below. Other issues bearing only upon the present motion concerning alleged governmental misconduct and interference with defendants' right to counsel are considered in Part V.

Having concluded that at least a limited evidentiary hearing is appropriate before final determination of Motion/Docket No. 245/577, and having ordered that the hearing commence on July 16, 1987, see Procedural Order of July 13, 1987, I am issuing this Memorandum and Order to advise the parties of tentative rulings (which may be modified) and reasons for them. Final rulings will be made during or after the evidentiary hearing.

## I.

The defendants' allegations of governmental misconduct, stated in Motion/Docket No. 245/577, focus on the following alleged events. Consideration of some of these alleged grounds may be precluded because of untimeliness of the motion. See Part V below.

(a) On May 7, 1987, Special Agent Richard Egan, FBI agent in charge of the investigation related to this case, spoke to Michael Trainor, a private investigator retained by defense counsel, regarding a communication purportedly made by Trainor to a Mr. Worthen concerning the whereabouts of Michael Gelber, an absent defendant. Defendants allege that Egan attempted to intimidate Trainor about associating with defendants by making threats to jeopardize his license and his career. Defendants also allege that during that same conversation, Egan made allegations directed against Odin Anderson, attorney for The LaRouche Campaign and Independent Democrats for LaRouche in this case.

(b) At an earlier date [not specified], Egan had questioned Attorney Odin Anderson in a hostile manner about absent defendants.

(c) On October 20, 1986, Egan, accompanied by Assistant United States Attorney John Markham, threatened and attempted to intimidate Attorney Joel Reinfeld (in the presence of Attorney Daniel Alcorn) by implying Reinfeld's involvement in instances of alleged unauthorized credit card charges.

(d) On October 9, 1986, Government Attorney Daniel Small stated in a heated conversation with Matthew Feinberg, counsel for Caucus Distributors, Inc., that he believed some of the attorneys in this case might not be practicing law by the time the case is over.

(e) On April 22, 1987, Daniel Alcorn, who represents Campaigner Publications, Inc. ("Campaigner"), was the subject of intimidation tactics, by the United States Attorney in Alexandria, Virginia, and several of his assistants, in connection with the involuntary bankruptcy proceedings against Campaigner.

The government, in response, has filed affidavits of each of the persons against whom defendants have leveled charges. Also, in relation to some of the charges concerning statements made by government counsel to defense counsel, the government argues grounds of justification associated with disclosure to defense counsel of matters that the government, if not required to disclose before trial, at least acted appropriately in disclosing. As to other charges, the government argues grounds of justification associated with ongoing efforts to locate absent defendants and investigation of an alleged ongoing conspiracy to obstruct justice.

Defendants' motion includes prayers for an evidentiary hearing at which defense counsel seek an opportunity for oral examination of each of the persons against whom they make charges of misconduct. Their motion is supported by affidavits of counsel of record in this case, including not only statements that might be received as admissible evidence but also conclusions (about motives of other persons) that the affiants would plainly not be competent to express under Fed.R.Evid. 602 and 701. Defendants seek an opportunity to examine government agents and attorneys, includ-

ing the persons they charge with misconduct, not only about their conduct but also about their motives and intent.

At a conference with counsel, held after the filing of Motion/Docket No. 245/577, the court expressed—and at a second conference reiterated—its concerns about the implications of allowing an evidentiary hearing of the scope requested. Among the concerns expressed was whether defense counsel had adequately considered the likely consequences for defendants and their counsel, as well as for the government and its counsel and agents, of judicial probing into motives of government counsel. After the court's reiteration of concern at the hearing of June 15, 1987, further responses were filed by the government (Docket No. 685, filed June 23, 1987) and by the defense (Docket No. 683, filed June 26, 1987).

## II.

Requests for a pre-trial evidentiary hearing inquiring into motive and intent of attorneys who represent parties in the case have profound implications. I begin consideration of these implications by taking note of distinctive characteristics of the criminal justice system.

## A.

The defendants' presumption of innocence and privilege against self-incrimination and the government's heavy burden of proof beyond reasonable doubt are fundamental characteristics of the criminal justice system.

Less fundamental, but nevertheless well established in current rules and practices, is the distinctive set of discovery rules in criminal cases, which contrast sharply with the current rules of discovery in civil cases. The contrast that has developed may be traced in part to the privilege against self-incrimination, which denies to the government a kind of discovery that is routinely available to plaintiffs in civil cases. Though the matter has been much debated, defendants in turn, having such a shield against discovery by the government, have been denied the broad scope of discovery

available to defendants in civil cases and have instead been allowed discovery only to the extent defined in statutes, rules, and precedents such as the Jencks Act, Fed.R. Crim.P. 16, and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The limitations on discovery in criminal cases create powerful incentives for defense counsel to seek evidentiary hearings on pre-trial motions, not only for the immediate purpose of enhancing the likelihood of obtaining the relief sought in the pre-trial motions but also for the purpose of obtaining discovery useful before and during trial.

Commentators on the criminal justice system, and on the performance of counsel within it, have sometimes challenged the "good faith" of attorneys who press for evidentiary hearings of broad scope in relation to pre-trial motions which, objectively assessed, have little chance of success. I conclude, however, that such criticisms are off the mark. Lawyers in all cases, civil and criminal, are expected to represent clients "zealously within the bounds of the law." *ABA Model Code of Professional Responsibility* Canon 7 (1980); *Canons of Ethics and Disciplinary Rules Regulating the Practice of Law*, Mass.S.J.C. Rule 3:07, Canon 7 (1986) (applicable to lawyers appearing in this court by reason of Local Rules of the U.S. District Court for the District of Massachusetts Rules 5(a), 5(d)(4), and 6 (1986)). *Cf. ABA Model Rules of Professional Conduct and Code of Judicial Conduct* Rule 1.3 comment (1984) ("A lawyer should act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf."); *id.* preamble ("As advocate, a lawyer zealously asserts the client's position under the rules of the adversary system."). In a number of instances, Canons and Rules impose a requirement that advocates act "in good faith." *E.g.*, Mass. S.J.C. Rule 3:07, DR 7–102(A)(2) ("good faith argument for an extension, modification, or reversal of existing law"), *id.*, DR 7–106(A) (a lawyer "may take appropriate steps in good faith to test the validity" of "a standing rule of a tribunal or a ruling of

a tribunal made in the course of a proceeding"). In other instances, an objective standard of conduct governs the behavior of advocates. *E.g.*, *id.*, DR 7-106(C) (at trial, a lawyer shall not "[s]tate or allude to any matter that he has no reasonable basis to believe is relevant to the case or that will not be supported by admissible evidence" and shall not "[a]sk any question that he has no reasonable basis to believe is relevant to the case and that is intended to degrade a witness or other person").

■ Despite the references to "good faith," one should be cautious, first, about assuming that particular conduct is to be judged by "good faith" rather than by an objective standard stated in an applicable rule and, second, about defining more precisely the standard for "good faith" conduct, where a "good faith" standard does apply. The substantive content of the standard of good faith depends on legal rules defining rights and duties of parties and their attorneys. If the rules about entitlement to an evidentiary hearing depend to some extent on motives, or the primary motive, of counsel, motive becomes relevant to good faith also. If the rules about entitlement to an evidentiary hearing depend instead entirely upon proof of circumstances presenting objectively reasonable grounds for seeking such a hearing, leaving motive irrelevant, then motive is also irrelevant to any standard of good faith that may properly be applied in this context. I conclude that as long as defense counsel in a criminal case have an objectively reasonable basis for requesting pre-trial evidentiary hearings in pursuit of the relief sought in pre-trial motions, their clients are entitled to have them seek that relief quite apart from the added benefit (coincidental in the eyes of the law) that they obtain discovery not otherwise available. Even if the primary incentive—and motive—is to obtain the benefit of that discovery, rather than to enhance to whatever extent may be feasible the likelihood of relief on pre-trial motions, the action of defense counsel is legally permissible and cannot fairly be characterized as not in "good faith."

In criminal as in civil cases the attorneys who appear on either side are officers of the court. This, too, is a fundamental characteristic of the criminal justice system. The attorneys are held to be officers of the court in part so they will be subject to judicial control over conduct that exceeds the bounds of zealous professional advocacy. Important as that justification for their status is, however, it is less critical than the contribution of their status, in positive ways, to the administration of justice. Positive contributions, apart from those in civil cases, are inherent in the special definitions of the roles of both government attorneys and defense attorneys in criminal cases. The distinctive roles also result in less symmetry than is characteristic of the roles of plaintiffs' and defendants' attorneys in civil cases. For reasons stated below, however, it does not follow that inquiries into motives of government attorneys are likely to be justified on grounds that would not lead to relevant inquiries into motives of defense counsel.

The specially defined roles of government and defense attorneys make positive contributions to the criminal justice system in numerous ways. Government attorneys bear not only the obligation imposed on all advocates to act within the bounds of law but also an additional obligation to take positive steps in the interest of achieving justice. As the Supreme Court stated in *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935):

> The United States Attorney is the representative not of an ordinary party to a controversy but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer.

Defense attorneys, also, have a specially defined role, and for very good reason. That special role serves the aim of justice

that no conviction result solely from the awesome power of government arrayed against an individual defendant. A fundamental premise of American criminal justice is that defendants will be zealously represented by advocates whose ability to serve clients effectively is protected by their status as professionals and officers of the court. "[T]he proper performance of the defense function is as vital to the health of the system as the performance of the prosecuting and adjudicatory functions." Report of the Attorney General's Committee on Poverty and the Administration of Federal Criminal Justice 10 (1963) (commonly referred to as the "Allen Report," the Committee having been chaired by Professor Francis Allen).

The Allen Report observes, as well: "The essence of the adversary system is challenge." *Id.* The challenge referred to, however, is not a personal challenge among parties or attorneys but the challenge to positions on issues of fact and law. Indeed, it is a gross misunderstanding of criminal justice, and of the incisive and compelling comments of the Allen Report, to think of the adversary system as encouraging or even tolerating personal charges among attorneys that stir emotions and tensions among advocates and divert their attention and the attention of the court from material issues of fact and law.

The candid, open, rigorous clash of ideas —not persons—is the essence of the search for truth and understanding. To allow a diversion of attention to charges and counter-charges against advocates themselves is to lose incisive focus on material issues of fact and law—the focus that characterizes the adversary system at its best and causes it to make its distinctive contribution to clearer understanding of issues, wiser decision making, and greater likelihood of achieving the goal of equal justice under law.

### B.

With these fundamental characteristics of the criminal justice system in view, I turn to considering the implications of requests for an evidentiary hearing, the scope of which extends to probing the motives of attorneys who are representing the government in the criminal proceedings of which the evidentiary hearings are a part.

First, even if the fact issues to be decided at the hearings extend only to motives of government counsel and not as well to motives of defense counsel (who might wish to use the hearing as a discovery device, or might wish to use the pre-trial motion or the evidentiary hearing for some purpose other than seeking the relief identified in the motion), it is obviously possible that defense attorneys as well as government attorneys will be competent witnesses. The affidavits filed by defense attorneys in this case illustrate the point. No doubt the portions of those affidavits stating the affiants' conclusions about motives of government attorneys in this case (as well as motives of other government agents and attorneys) cannot properly be received as evidence because no person as witness is competent to give a sworn statement of fact finding inferences, even though that same person, as attorney, may properly argue that the court, as fact finder, should draw those same inferences from circumstantial evidence before the court, including evidence appearing in the affidavits of the defense attorneys. Nevertheless, as affiants their credibility may be challenged. And, absent some special rule limiting cross-examination (which indeed it may be appropriate for a court to adopt, a matter considered below), the motives of defense counsel in filing motions and requesting an evidentiary hearing are relevant to credibility under routinely applicable rules regarding bias and interest of a witness. Thus, if the court allows a request for an evidentiary hearing into motives of government attorneys in the case, all attorneys in the case, on both sides, become potential witnesses, and the motives of all attorneys in the case, on both sides, become potential areas of inquiry.

One significant implication of such inquiry is the potential effect on representation in further proceedings in the case, both at the evidentiary hearing and thereafter. An attorney (either for the govern-

ment or for any defendant) who becomes a witness in pre-trial evidentiary hearings may be required to withdraw from representation in any further proceedings in the case. *Cf. ABA Model Code of Professional Responsibility* DR 5–102(A) (applying to counsel in this court under Mass.S.J.C. Rule 3:07 and Rules 5(a), 5(d)(4), and 6 of Local Rules for the United States District Court for the District of Massachusetts). Defense counsel in the present case appear, at least implicitly, to argue that the court need not regard this risk as a serious concern. And it is true that one might reasonably argue that DR 5–102(A) is designed for the protection of client interests and that its objectives would not be served by disqualifying counsel in circumstances such as those presented by the requests for evidentiary hearings in this case. I conclude, however, that it must be a matter of serious concern.

In the first place, a possibility of disqualification exists in the circumstances of this case, on grounds generally applicable to both civil and criminal proceedings. Though an argument might reasonably be presented for defining the distinctive role of defense counsel in criminal cases in a way that would excuse them from disqualification under DR 5–102(A), no hint of such a special rule appears in the text of the Code of Professional Responsibility of which DR 5–102(A) is a part. Nor has any precedent for doing so come to my attention.

In the second place, the impact that an appearance of an attorney as a witness in a pre-trial evidentiary hearing would have upon that attorney's relationship with the court and other attorneys throughout the remainder of the case may itself be a compelling reason for requiring withdrawal. If attorney-witnesses were permitted to remain in the case, the evidentiary hearing would be likely to have a significant impact upon those relationships. This becomes painfully obvious when one considers the likelihood that, in order to resolve conflicts in the evidence, it would be necessary for the court to make findings regarding the credibility of attorney-witness testimony and state those findings publicly, on the record. But this is only the tip of an iceberg lying as an obstacle somewhere between the evidentiary hearing and the conclusion of a fair trial.

A further implication of evidentiary hearings in which the trial court makes findings of fact with respect to government attorneys' motives and intent (as distinguished from findings as to whether conduct violated an objective standard), is that the trial court will necessarily invite, if not require, testimony from every government attorney concerning all acts that defense counsel choose to identify by challenging the government attorneys' motives in taking these actions. Moreover, if the court must make fact findings as to what motive or motives did in fact influence the attorney's actions, rather than determining only whether the government has shown the existence of circumstances in which it would have been objectively reasonably and permissible for the attorney to act as he or she did, it may be difficult to find any reasoned way to avoid a scope of inquiry that is both pervasive and deeply intrusive. What inquiry into prosecutorial strategy, tactics, or plans could be rationally declared irrelevant?

Furthermore, if the court were to allow such an inquiry, should it likewise allow inquiry into the motives of defense counsel —if the government chooses to challenge their motives—in seeking discovery through the evidentiary hearing and in making allegations of professional misconduct against the prosecutorial team? Would not such inquiries at least be relevant to the credibility of the assertions by defense attorney-witnesses that government attorneys had acted in bad faith? And should the court allow inquiry into the motive of defense counsel in filing supporting affidavits which include conclusional assertions of motivation of other persons— assertions that the affiants, being attorneys, could not reasonably have believed themselves to be competent to make as witnesses (even if permitted to make them as advocates)?

Even if some means may be devised of containing the scope of such a swearing

match between attorneys, judicial inquiry into motivations of counsel on one side of pending litigation, prompted by charges made by counsel on the other side, which arose from communications between them as opposing counsel, inevitably will confront the court with the necessity, noted above, of making fact findings on the credibility of officers of the court. The dangers of such a situation may be compounded because excesses on either side might lead to a further necessity to consider whether the bounds of professionally permissible conduct had been exceeded. Moreover, unless then disqualified from further service as counsel in the case, these officers of the court—on both sides of the case—would continue to appear before the court as advocates throughout the remainder of the litigation. This is potentially a matter of profound significance for the adversary system generally and the criminal justice system in particular.

I conclude that before determining whether an evidentiary hearing of any kind is to be allowed in relation to this motion, I should consider not only what precedents and analogies can be marshaled in support and in opposition but also what alternatives as to the precise scope of such a hearing should be considered.

### III.

#### A.

I turn first to an examination of precedents bearing upon inquiries into motive and intent of government agents generally. The principal Supreme Court opinion relied upon by defendants is *Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). That case cannot be taken as a holding in point for defendants, however, because it rejected the claim of a Sixth Amendment violation on the facts before the Court. Nevertheless, in denying the claim, the Court emphasized that the situation before the Court was not one "where the State's *purpose* " was a forbidden one. *Id.* at 557, 97 S.Ct. at 844 (emphasis added). What guidance for the present case can be drawn from this considered statement—

even if not a holding—of the Supreme Court?

As a first step to understanding the significance of *Weatherford v. Bursey* in the present context, I take note that the specific claim before the Court in that case was that government agents had intruded upon the confidentiality of the attorney-client relationship to obtain protected information. Bursey brought a civil action under 42 U.S. C. § 1983 against an undercover agent, Weatherford, who had attended meetings of Bursey and his counsel when Bursey was a defendant in a criminal case. Weatherford had attended the meetings in the guise of a co-defendant, to protect his undercover status. The Court rejected Bursey's § 1983 claim because Weatherford had not initiated or asked for a meeting, and he had not passed on to the prosecuting attorney details or information regarding trial plans or strategy. The Court observed, "this is not a situation where the State's purpose was to learn what it could about the defendant's defense plans." 429 U.S. at 577, 97 S.Ct. at 844. As the district court found, Weatherford "did not intrude at all; he was invited to the meeting apparently not for his benefit but for the benefit of Bursey and his lawyer," and he went "to avoid raising the suspicion that he was in fact the informant whose existence Bursey and Wise already suspected." *Id.* The Court recognized the "unfortunate necessity of undercover work and the value it often is to effective law enforcement" and determined an informant need not "unmask himself" by refusing to attend attorney-client meetings. *Id.* For these reasons, the Court concluded that "unless Weatherford communicated the substance of the Bursey–Wise conversations and thereby created at least a realistic possibility of injury to Bursey or benefit to the State, there can be no Sixth Amendment violation." *Id.* at 558, 97 S.Ct. at 845.

*Weatherford* makes clear that an informant does not "intrude" into the defense camp by accepting an invitation extended for the benefit of the defendant and defense counsel unless the intrusion is "deliberate" and that the requirement that an intrusion be "deliberate"—a state-of-mind

standard—refers to wrongful motivation and not merely to knowledge on the part of a government agent that the informant is attending a defense meeting. Arguing by analogy to *Weatherford,* defendants assert that deliberate misconduct on the part of the government attorneys and agent in this case would be sufficient to establish a Sixth Amendment violation that would entitle them to dismissal. In their submissions in support of an evidentiary hearing on the issue of motivation, defendants appear to be arguing that a Sixth Amendment violation must be found if any part of the government's motivation or behavior was impermissible. The contention is that even if the government's actions were objectively reasonable or primarily directed at achieving objectively reasonable ends, a co-existing improper motive would be sufficient to establish a Sixth Amendment violation.

The *Weatherford* decision did not address how the state-of-mind standard it established should be applied to circumstances in which the government representatives acted with multiple purposes or "mixed motives." This court addressed issues related to mixed motives in *United States v. Vest,* 639 F.Supp. 899 (D.Mass.1986), *aff'd,* 813 F.2d 477 (1st Cir.1987) (without consideration of this issue, appeal having been taken on other grounds only).

In general, the possible rules for determining the legal consequences of acting with multiple purposes range along a spectrum. At or near one end of the spectrum are legal rules making outcomes depend on whether a legally relevant purpose was the actor's "sole purpose" (or, at least, the sole purpose having any significant influence on the actor). At or near the other extreme are rules making outcomes depend on whether a legally relevant purpose was to any extent, even the slightest, one of the actor's purposes.

Near the middle of the spectrum are rules of two distinct types: first, those making outcomes depend on whether a legally relevant purpose was the actor's "primary" or "dominant" purpose, and second, those making outcomes depend

on whether a legally relevant purpose was a "determinative factor" in the actor's conduct.

. . . .

No clear guidance emerges ... from the pattern of precedents in other contexts of legal rules regarding an actor's multiple purposes. Indeed, some support can be found for rules located at each of the three principal points on the spectrum of state-of-mind rules, as well as rules depending on an objectively reasonable basis for a legitimate purpose. *E.g., Second Restatement of Torts* § 603 comment a (1977) (one who has a conditional privilege in defamation abuses the privilege by publishing defamatory matter "solely from spite or ill will" and "not in any part" to protect the interest because of which the conditional privilege is recognized); *id.* (but if the publication is made "for the purpose of protecting the interest in question, the fact that the publication is inspired in part by resentment or indignation at the supposed misconduct of the person defamed does not constitute an abuse of the privilege"); *Gold v. East Ramapo Central School District,* 115 A.D.2d 636, 637, 496 N.Y.S. 2d 296, 297 (2d Dep't 1985) (under New York prima facie tort doctrine, verified complaint was properly dismissed when it failed "to allege facts sufficient to demonstrate that ... [defendant's act] was motivated solely by a desire to harm" plaintiff); *Roberts v. Pollack,* 92 A.D.2d 440, 446, 461 N.Y.S.2d 272, 276 (1st Dep't 1983) (under New York prima facie tort doctrine, claim fails if plaintiff "fails to allege facts sufficient to demonstrate that in issuing the subpoena defendant was motivated solely by a desire to harm or torment her"); *Coleman v. Newark Morning Ledger Co.,* 29 N.J. 357, 373–77, 149 A.2d 193, 202–03 (1959), *citing* W. Prosser, *Torts* 601, 627–28 (2d ed. 1955) and *Restatement of Torts* § 603 (privilege in defamation cases is lost "if the publication is not made primarily for the purpose of furthering the interest which is entitled to protection" or if the defendant is moved "chiefly" by

"motives of ill will, or to accomplish a distinct objective which may be legitimate in itself but is not within the privilege"); *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 287 [97 S.Ct. 568, 576, 50 L.Ed.2d 471] (1977) (plaintiff must show that his conduct in the exercise of First Amendment rights "was a 'substantial factor'—or, to put in in other words, that it was a 'motivating factor' " in school board's decision not to rehire him; plaintiff having carried that burden, district court should have determined whether school board would have reached the same decision in the absence of protected conduct); *Monteiro v. Poole Silver Co.,* 615 F.2d 4, 9 (1st Cir.1980) ("it is by now clear, where motives are mixed, that the impermissible motive must be a determinative factor in the employer's decision if plaintiff is to prevail ..."); *United States v. Arra,* 630 F.2d 836 (1st Cir.1980) (where objectively reasonable basis for administrative search existed, evidence of contraband uncovered in Coast Guard administrative search of shipping vessel would not be suppressed even if part of motivation was to discover contraband), cited with approval in *United States v. Villamonte–Marquez,* 462 U.S. 579, 584 n. 3 [103 S.Ct. 2573, 2577 n. 3, 77 L.Ed.2d 22] (1983).

*Id.* at 902–04. *See generally* Love, *Retaliatory Discharge for Filing a Workers' Compensation Claim: The Development of a Modern Tort Action* 37 Hastings L.J. 551, 571–78 (1986) (discussion of mixed motive in causes of action for retaliatory discharge).

The most valuable guidance on the questions presented here is provided, I conclude, by decisions regarding what has been called a "pretext" argument. For example, in relation to Coast Guard searches of ships of foreign registry at sea, defense counsel have argued that evidence seized in a search should be suppressed if the Coast Guard's registration-check was a pretext and the officers' true motive was the hope of finding marijuana. Addressing such an argument, in *United States v. Kin-*

*caid,* 712 F.2d 1, 4 (1st Cir.1983), the court stated:

The Supreme Court, however, has consistently rejected this type of "pretext" argument, most recently in *United States v. Villamonte–Marquez,* [462 U.S. 579,] 103 S.Ct. 2573 [77 L.Ed.2d 22] (1983). The Court there explicitly stated that an otherwise lawful document search does not become unlawful because the officer might in fact have been looking for drugs, not documents. *Id.* at [584] n. 3, 103 S.Ct. at 2577, *citing Scott v. United States,* 436 U.S. 128, 135–39 [98 S.Ct. 1717, 1722–24, 56 L.Ed.2d 168] (1978); *see also United States v. Watson,* 678 F.2d 765, 769–71 (9th Cir.) (rejecting "pretext" argument in a Coast Guard document search), *cert. denied,* [459] U.S. [1038], 103 S.Ct. 451 [74 L.Ed. 2d 605] (1982); *United States v. Hayes,* 653 F.2d 8, 12 (1st Cir.1981) (same); *United States v. Mazyak,* 650 F.2d 788, 790 (5th Cir.1981) (same); *United States v. Arra,* 630 F.2d at 845–46 (same); *United States v. Demanett,* 629 F.2d 862, 868–69 (3d Cir.1980) (same), *cert. denied,* 450 U.S. 910 [101 S.Ct. 1347, 67 L.Ed.2d 333] (1981).

*See also United States v. Pringle,* 751 F.2d 419, 425 (1st Cir.1984). Rejection of "pretext" arguments implies that inquiry into alleged mixed motivations is irrelevant when the government claims it had reasonable grounds for the challenged government action. The inquiry focuses instead upon whether the asserted facts constituting reasonable grounds did or did not exist.

*Weatherford v. Bursey* and most of its progeny are concerned with intrusions "into the defense camp," *United States v. Mastroianni,* 749 F.2d 900, 905 (1st Cir. 1984)—that is, with alleged acquisition of information about defense evidence and strategy by intrusions into the confidentiality of the relationship between defendants and their attorneys. In that context, consistently with the conclusions expressed above, permissible motive or purpose is established if the government shows that information constituting reasonable grounds for allowing the informant to attend the defense meeting to which he had been invit-

ed was *known to and considered by* the participating government agents at the time of their decision to allow the informant's attendance. I next consider whether precedents bearing upon such intrusions into the defense camp should be extended to the alleged impairment of defendants' rights to counsel by the kinds of actions charged here.

Defendants appear to argue, citing *Briggs v. Goodwin,* 698 F.2d 486, 493 n. 22 (D.C.Cir.1983), that this question should be answered affirmatively on the ground that any "intrusion" of any kind upon the attorney-client relationship is a per se Sixth Amendment violation. But that is plainly not a correct reading of *Briggs,* because the court observed in that case that even the "attendance by an undercover agent at a meeting with the criminal defendant and his attorney"—a kind of intrusion of greater potential harm than the kind alleged here—"does not constitute a Sixth Amendment violation as long as the agent communicates nothing of what he learns to his superiors and does not testify as to the content of the conversation." 698 F.2d at 493.

In the absence of precedent directly in point, I conclude it will be useful to consider a number of subsidiary questions of law and fact in order to reach a better informed prediction of the likely answer of higher courts to the entitlement of defendants to an evidentiary hearing of the kind and scope requested by the defendants in this case.

## IV.

Can one discern some guiding theme or principle that informs the interpretation and application of the whole array of precedents bearing upon requests for evidentiary hearings ancillary to pre-trial motions of defendants for dismissal of indictments, suppression of evidence, or lesser relief? Perhaps as likely a candidate as any for recognition as such a principle is that a defendant seeking a pre-trial evidentiary hearing must show reasonable grounds for asserting a substantial likelihood that, if an evidentiary hearing is allowed, a set of facts can be proved on the basis of which the defendant will be entitled to a particular form of relief requested in the motion.

A second principle, relevant to adjudicatory proceedings of all types, applies with special force to pre-trial evidentiary hearings in trial courts. The scope of the hearing should be defined before the hearing commences. The initial definition should ordinarily be provisional, so the process is not deprived of the value of insights that come to advocates and decision makers only after involvement and reflection. Nevertheless, early definition is an imperative of sound judicial administration. The purpose is not merely to make wise use of limited resources, public and private, but, of even greater significance, to enhance the quality of decision making by sharpening the focus on material issues. Often it is is especially useful to require the party requesting relief to frame the order proposed for entry by the court at the conclusion of the hearing, thus identifying precisely the relief requested, and to require each party to frame such an order for each of any lesser forms of relief either proposes in the alternative.

In the application of this second principle, a court may appropriately require that the party seeking relief identify with reasonable particularity the alleged set of facts claimed to be a basis for each form of relief sought, and the supporting legal theory. The purpose is not to confine or restrain advocacy, but to clarify. Thus, the legal theory may be either a theory that is warranted by existing law, called to the court's attention, or a theory that is disclosed to the court to be based on an argument for an extension, modification, or reversal of existing law.

Clarification of these three elements— the relief sought, the factual basis alleged, and the legal theory asserted in support of that relief—defines the relevant issues and thus defines as well the appropriate scope of any evidentiary hearing material to those issues. Requiring movants to be specific about these elements is consistent with the objective of allowing an evidentiary hearing for which objectively reasonable

justification is advanced while also guarding against abuse, which would result if a hearing justified on some ground of relatively limited consequence were allowed to serve as an entering wedge for a hearing of broad scope and undefined limits. As already observed, imposing definitional requirements serves not merely the interests of efficient use and conservation of public and private resources but as well the public interest in the quality of decision making. In the present context, this latter interest includes a concern with maintaining the accommodation of interests reflected in the law regarding the scope of pre-trial discovery. If that accommodation is to be modified, the change ought not to be accomplished in a haphazard, coincidental way.

■ Pursuant to these principles, a trial court presented with requests for evidentiary hearings may appropriately consider the following questions, in the order stated (except where an answer to a later step is clear and is dispositive of the motion before the court):

First. *Identified Right.* Is the alleged right to be vindicated a legally cognizable right?

Second. *Factually Based Claim of Harm.* Are the allegations before the court supported by a showing of factual circumstances in which there is at least a substantial likelihood that full exploration of the facts will show that the alleged violation of that cognizable right has caused some substantial (or "not insubstantial") impairment of that right? *Cf. Weatherford v. Bursey*, 429 U.S. 545, 551, 97 S.Ct. 837, 841, 51 L.Ed.2d 30 (1977); *U.S. v. Mastroianni*, 749 F.2d 900, 907 (1st Cir.1984).

Third. *Identified Remedy.* Is there a match between the alleged wrong and the proposed remedy? That is, would any form of relief proposed by the movant(s) be effective to vindicate the cognizable right in the circumstances of the case before the court?

Fourth. *Least Costly of Effective Remedies.* Where more than one form of relief would be effective, should one or more of the proposed forms of relief be rejected because another form of relief would be adequate to protect against impairment of the cognizable right in the circumstances of the case and would be less costly—that is, less harmful or damaging to other legally cognizable rights? *Cf. United States v. Morrison*, 449 U.S. 361, 366, 101 S.Ct. 665, 668, 66 L.Ed.2d 564 (1981).

Fifth. *Entitlement as a Matter of Law.* Is the least costly of the potentially effective remedies justified as a matter of law? If so, that least costly remedy should be granted and there is no need for an evidentiary hearing with all its costs and consequences. If not, the analysis should proceed to the next step.

Sixth. *Objectively Reasonable Basis for Challenged Action Established.* Is the court able to determine on the submissions before it that circumstances existing at the time of the challenged action provided an objectively reasonable basis for the government's taking that action? If so, the court should next consider the eighth question. If not the seventh question should be considered, to determine whether relief should be granted without reaching the eighth question.

■ Seventh. *Written Submissions or Evidentiary Hearing Limited to Determining Whether Objectively Reasonable Basis Existed.* (a) After further submissions have been invited by the court and filed by the government, and further defense responses have been invited and filed (unless the court makes the exceptional determination that *in camera* submissions should be received from the government but not submitted to defense counsel), is the court able to determine that the factual circumstances of the case provided an objectively reasonable basis for the government's taking the action that is challenged by the defendant(s)? If so, the court should next consider the eighth question. If instead the court determines that the circumstances did not provide an objectively reasonable basis for the government action, the least costly remedy should be

granted and there is no need for an evidentiary hearing.

(b) If the court is unable to make either of the foregoing determinations on written submissions, an evidentiary hearing of limited scope should be allowed unless the court determines that as a matter of law one answer or the other should be reached because of a legal rule allocating a burden of proof or of production. Until question eight has been addressed, however, the scope of the evidentiary hearing should be limited to evidence bearing upon a fact finding as to whether circumstances providing an objectively reasonable basis for the challenged government action did or did not exist.

*Eighth. Motive or Pretext and the Legal Standard.* Do the applicable precedents (or applicable rules derived from the most apt dicta, analogies, or other sources of authority) allow "pretext" or "mixed motive" inquiries rather than requiring that relief be denied to the defendant(s) because of the existence of an objectively reasonable basis for the government's action? If so, the ninth question must be considered. Otherwise both the defense request for an evidentiary hearing on motive and the defense motion for relief should be denied. *Cf. Scott v. United States,* 436 U.S. 128, 138, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978); *United States v. Arra,* 630 F.2d 836, 845 n. 12 (1st Cir. 1980).

*Ninth. Limitations on the Scope of Motive Inquiries.* Are other highly valued rights at stake in addition to the cognizable right asserted by the defendant(s) and, if so, is it or is it not appropriate to place some limitations on the scope of an evidentiary hearing into motives—either in relation to the nature of the challenged conduct, the types of agents whose conduct is challenged, or the sources of evidence (for example, by denying or more sharply limiting inquiries into motives of attorneys of record in the case than of other possible witnesses).

I do not suggest that these nine questions would be apt for evaluating requests for evidentiary hearings during pre-trial proceedings in all criminal cases. No doubt supplementation, emendation, or modification would be necessary if they were to be used generally. Nevertheless, I addressed each of these questions before entering the Procedural Order of July 13, 1987, will do so again in giving further consideration to the pending motions for evidentiary hearings, and will invite counsel to do so during further conferences and hearings on these motions.

### V.

In some respects the Motion to Dismiss Based on Governmental Misconduct and Interference with Defendants' Right to Counsel is founded on events occurring after the deadline set by the court for filing of pre-trial motions, which deadline, as last extended (with specially allowed exceptions not applicable to this motion) was January 29, 1987.

▄▄▄ As to the grounds based entirely on events occurring in April and May 1987, I find that good cause exists for late filing. However, the occurrence of these events after the deadline (and within six weeks of the date of filing the motion) does not alone constitute good cause for allowing defendants to assert earlier events, occurring before the deadline, as a basis for a motion filed long after the deadline. Allegations of similarity of the earlier events and conclusional allegations of a pattern do not alone constitute good cause for late filing of serious charges of the kinds asserted in the Motion to Dismiss Based on Governmental Misconduct and Interference with Defendants' Right to Counsel. Thus, leave to file that motion is allowed only as to grounds based exclusively on events occurring after April 1, 1987, no showing having been made of good cause for not sooner filing a motion based on those earlier events.

For these reasons, I will deny the defense request for evidentiary hearings on the subject matter identified above, in Part I, paragraphs (b), (c), and (d). These conclusions are supported not only by failure to explain the apparent untimeliness of the requests but also by both the first and the second principles stated in Part IV, and by the failure of the submissions to make any showing at all that would support an

affirmative answer to the Second question in the suggested sequence.

The requests as to paragraphs (a) and (e) remain under consideration.

## ORDER

For the foregoing reasons, it is OR-DERED:

(1) As scheduled in the Procedural Order of July 13, 1987, an evidentiary hearing is allowed, commencing at 9:15 a.m., July 16, 1987 on the following question:

Was anything that was observed or seized in the bankruptcy action in the Eastern District of Virginia—or were the fruits of anything so observed or seized—communicated to anyone involved in the prosecution of the present case?

(2) No showing of good cause for late filing having been made by defendants as to the subjects identified in Part I of the foregoing Memorandum, paragraphs (b), (c), and (d), the request for evidentiary hearing as to those subjects is denied.