UNITED STATES of America, Plaintiff,

v.

**Acquilino MELO, and Manuel Melo, Defendants.**

Crim. No. 88–202–K.

United States District Court, D. Massachusetts.

Dec. 22, 1988.

R.J. Cinquegrana, for the U.S.

Rikki Klieman, Friedman & Atherton, Boston, Mass., for Acquilino Melo and Manuel Melo.

Lawrence Arnkoff, Coral Gables, Fla., for defendant Stanley Mumford.

No counsel for Rui Cardoso, Roberto Felizola, Charles Goldman, Stephen Becker and William Rego.

Paula Elden, Los Angeles, Cal., for defendant Pedro Camacho.

William A. Brown, Brown & Prince, Boston, Mass., for Roberto Garcia.

MEMORANDUM AND ORDER

KEETON, District Judge.

The government moves to disqualify attorneys Jeffrey Weiner and Alan Ross, both of the same law firm, from representing Acquilino Melo and Manuel Melo respectively. In the alternative, if the court does not grant its motion for disqualification on the basis of the government's proffer, the government requests an evidentiary hearing at which time the government would call as witnesses, under subpoena, attorneys of the bar of this court who represented in other criminal proceedings a

person the government will call as a witness in the trial. The government's motion is based upon two fundamental contentions: (1) Weiner, as attorney for Acquilino Melo, advised and assisted Acquilino Melo, as client, in Acquilino Melo's actions to obtain legal representation by attorneys in Boston for an associate of Acquilino Melo, which actions of Acquilino Melo the government charges were in furtherance of the conspiracy charged in this case and, although the government does not contend that the conduct of Weiner was legally or professionally impermissible, neither Weiner nor his partner in law practice can, in these circumstances, properly appear as counsel for any defendant in this case; and (2) an actual or potential conflict of interest between Acquilino and Manuel Melo exists so that one law firm cannot represent both defendants. Defendants oppose disqualification on the proffer alone and oppose the requested evidentiary hearing on the ground that the government has failed to make a proffer sufficient to entitle the government to such a hearing.

I conclude that the requested evidentiary hearing is neither required nor useful and that disqualification of attorneys Weiner and Ross will be required absent waivers on terms that remove apparent conflicts of interest and insure integrity of the judicial proceedings.

## I.

On October 11 and 12, 1988, this court held a preliminary hearing at which a government proffer was made and defendants offered opinion evidence of witnesses qualified as experienced defense counsel.

The attorneys appearing for defendants Acquilino and Manuel Melo in this case have argued that the government, like a defendant, must make a preliminary showing of entitlement to relief as required of defendants by this court in *United States v. LaRouche Campaign*, 682 F.Supp. 610, 621 (D.Mass.1987), before the evidentiary hearing requested by the government should be held.

The court allowed the filing of memoranda by the parties and amici curiae, and the matter is now before the court for decision.

## II.

The essential facts contained in the government's proffer, and upon which the government's motion to disqualify is based, are as follows.

The indictment in this case makes charges against Acquilino and Manuel Melo stemming from their alleged participation in a "racketeering enterprise" whose purpose it was to import marijuana into the United States. In Count I of the indictment the government alleges that one aspect of the racketeering enterprise was "protecting members of the organization from prosecution and providing them with attorneys' fees and money when they were prosecuted." Count 2 alleges that Acquilino Melo conspired with Manuel Melo, Stanley Mumford, and others to commit the racketeering offenses alleged in Count I.

Manuel Melo is described in the indictment as an assistant to Acquilino Melo.

One of the racketeering acts alleged in the indictment is the importation of marijuana into the New Bedford Harbor on the boat the "Four of Us," on or about July 27, 1983. In previous proceedings, James Pauline was indicted and convicted in 1986 for trafficking in marijuana in connection with the "Four of Us" load.

Attorney Wall represented Pauline at his criminal trial. Attorney Mezer represented Pauline on the direct criminal appeal from his conviction.

The government contends that the evidence it proffers—which includes Wall's record of time spent on Pauline's case, information from Pauline and his wife, and recorded telephone conversations between Pauline's wife and Acquilino Melo—shows reasonable grounds for believing that Weiner may have knowledge of facts that are material to the government's allegation in Count I that it was the practice of the racketeering enterprise to provide attorneys' fees and other support for members

of the organization who faced criminal prosecution.

In particular, the proffered documentary evidence shows that Wall was in contact with Weiner on several occasions with regard to Wall's representation of Pauline. In addition, the government contends that recorded telephone conversations that will be offered in evidence at trial disclose that Acquilino Melo told Pauline's wife, among other things, "that Attorney Weiner's 'whole firm' was involved in 'this problem with the lawyer up North'" and that "attorney Weiner's firm was 'coaching' attorney Mezer, 'telling him what to do.'" Government's Second Memorandum in Support of its Motion to Disqualify Defense Counsel, p. 10 (Docket No. 87).

### III.

At the hearing of October 11–12, 1988, defendants offered the testimony of experienced defense counsel that they would not call Weiner as a defense witness. I find this testimony credible and find that it is highly improbable that any defendant would choose to call attorney Weiner as a defense witness. If, however, any issue before the court at trial will turn on Weiner's participation in events that are the subject of evidence received at trial of this case, the proffered testimony of the experienced defense counsel and the finding I have made do not address the point that Weiner's conduct and credibility may be at issue even if he is not called as a witness.

Defendants argue that any concern the court may have that Acquilino Melo is forfeiting his right to call Weiner as a witness on his behalf is cured by Acquilino Melo's statement in his affidavit that he understands that by having Weiner as his attorney he waives his right to call Weiner as a witness and, having made that waiver, continues to assert his Sixth Amendment right to counsel of his choosing. In addition, in response to the government's concern that its legitimate interest in being able to call Weiner as a rebuttal witness would be compromised by Weiner's presence as an attorney for defendant, defendants argue that this problem is cured by Acquilino Melo's

waiver of the right to testify to anything that would entitle the government to call Weiner in rebuttal. Affidavit of Acquilino Melo, pp. 2–3, Para. 5 (Docket No. 88).

This second response by defendants, like the proffered opinion evidence of experienced defense counsel, fails to address serious issues arising from the likelihood that Weiner's conduct will be in evidence, even if he is not a witness.

Here, the government proposes to prove at trial that an attorney who represents one of the defendants on trial was, at a time during the period of the alleged racketeering enterprise, both counseling a client and acting to aid the client in obtaining legal representation by other attorneys for an acquaintance whom the client wished to help. Thereafter, the client was indicted, and the indictment alleges that the client's activities in helping the acquaintance obtain legal representation in other criminal proceedings were in furtherance of the criminal enterprise charged in the indictment. In these circumstances, as already noted, the attorney conduct will be in evidence. Also, the government proposes to offer in evidence tape-recorded conversations in which one of the recorded voices attributes to the attorney statements made at a previous time or times. If such evidence is received, and if the evidence also identifies Weiner as that attorney, and the content of that attributed statement is in any way relevant in this trial, the position of Attorney Weiner, even if not called as a witness, would be problematic. For example, constraints would necessarily be imposed upon him both in cross-examining any witness who gave testimony on that subject, and likewise in making any argument regarding the credibility of evidence of any statement attributed to him.

If in any way evidence that the attorney knew, or evidence that the attorney did not know, of the alleged intent of his client, Acquilino Melo, would tend to support or to rebut the government's charge that in enlisting the attorney's assistance Acquilino Melo was acting in furtherance of the charged conspiracy, the trial will inevitably involve a strong likelihood of inferences by

the jury about the attorney's knowledge or lack of knowledge of the client's alleged intent. As a defense attorney in this case, at least implicitly if not explicitly, the attorney will be arguing to the jury that his conduct and the conduct of his client Acquilino Melo in obtaining legal assistance for others were not in furtherance of the alleged conspiracy as charged. In these circumstances, both the attorney's credibility and his conduct are relevant to the jury's determination of inferences to be drawn. Regardless of whether or not arguments are explicitly made to the jury about the attorney's knowledge or lack of knowledge of the client's intent, and about whether the attorney's conduct was professionally correct in every respect, questions on that subject are likely to arise in the minds of jurors and speculative inferences are likely to be drawn by jurors if they receive no guidance on the subject from either the court or counsel. If no guidance is given to the jury, there will be risks of impairment of the integrity of the trial because of the high likelihood that the jury will engage either in speculative inferences unfair to the government or in speculative inferences unfair to Acquilino Melo, and perhaps as well to Manuel Melo if the latter is being represented by a partner of Acquilino Melo's attorney. It is not a satisfactory answer to this problem that the risks of unfairness may be almost evenly balanced as between the government and a defendant. Also at stake is the compelling public interest both in the integrity of judicial proceedings and in their being free of characteristics that would raise doubts about their integrity among observers— even among impartial observers with no personal interest in the outcome.

These circumstances also present quite obvious potential conflicts of interest between Acquilino and Manuel Melo (both as to whether the attorney should be called as a witness, and as to whether he should be participating in the trial as attorney for one of them, even if not a witness) and potential conflicts between these two attorneys and their clients with respect to whether evidence should be offered to explain the circumstances of the attorney's conduct and to show that it was in every respect professionally correct.

## IV.

To be weighed alongside the interests in integrity of judicial proceedings and in conflict-free representation of the defendants Acquilino and Manual Melo are the constitutionally protected rights of these defendants to counsel of their own choosing.

Although the Sixth Amendment right to counsel of one's choosing is not absolute, the First Circuit has resolutely honored this right by directing that a court must ensure that alternative means short of disqualification have been considered and found wanting before disqualification is ordered, and that an identifiable actual or potential conflict of interest be found before disqualification is ordered. *In re Grand Jury Proceedings*, 859 F.2d 1021 (1st Cir.1988); *United States v. Panzardi—Alvarez*, 816 F.2d 813 (1st Cir.1987); *United States v. Diozzi*, 807 F.2d 10, 12 (1st Cir.1986). In addition, the First Circuit has held that a defendant need not show that he would be prejudiced by the disqualification because the right to counsel of one's choice "reflects constitutional protection of the defendant's free choice independent of concern for the objective fairness of the proceedings." *United States v. Panzardi—Alvarez*, 816 F.2d at 818, quoting *Flanagan v. United States*, 465 U.S. 259, 267–68, 104 S.Ct. 1051, 1055–56, 79 L.Ed.2d 288 (1984).

Pursuant to this special solicitude for the defendants' interest in having counsel of their own choice, courts have in some circumstances allowed defendants to make a voluntary and informed waiver as a means of avoiding disqualification because of a conflict of interest. *E.g., United States v. Donahue*, 560 F.2d 1039 (1st Cir.1977); *United States v. Foster*, 469 F.2d 1 (1st Cir.1972).

## V.

The court must also consider, however, whether the deeper problem identified in Part III is one that a waiver will not cure.

The Supreme Court has recently held that waivers by all affected defendants may not be adequate to satisfy a federal court that the Sixth Amendment right to counsel of one's choice can be honored without violating the *attorneys'* duties as officers of the court. *Wheat v. United States,* — U.S. —, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988). The Court there held that the Sixth Amendment right is "circumscribed in several important respects," including, limitations on a defendant's right to have counsel he cannot afford, or counsel who is not a member of the bar, or counsel who has previously represented an opposing party. *Id.* A Federal Court's duty, in addition to protecting the attorney-client relationship, extends to "ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Id.*

In this case, Weiner's mere presence as counsel at trial may create an appearance of impropriety because the government will no doubt refer to the tape recorded conversations, and introduce Wall's records as evidence of the alleged conspiracy to provide attorneys' fees and support for members of the organization who face criminal proceedings.

The government does not allege that the attorneys acted improperly. The government does allege, however, that Acquilino Melo was using the attorney to take actions that served the conspiracy—the provision of legal services to co-conspirators who were apprehended and charged. Thus, it is implicit, if not explicit, that the conduct of the attorney was legally and professionally proper only because Acquilino Melo withheld from him the reasons he was enlisting professional advice and services for another person in criminal proceedings to which he was not a party. In these circumstances, if Weiner is identified in the evidence as the attorney referred to in Wall's records and in the tape-recorded conversations, any argument made by Weiner to the jury in this trial concerning the defendants' participation in the alleged scheme to provide attorneys fees to persons within the organization accused of a crime would be problematic in that Weiner would be implicitly arguing as an "unsworn witness" for the propriety of his own conduct as well as explicitly arguing that the government had failed to prove the elements of the crimes charged against his client.

Amici curiae and defendants argue that the government's proffer, stripped of alleged mischaracterization, discloses nothing more than proper and customary criminal defense practices. This response fails, however, to address the point that the attorney may have been placed in a position like that of any other innocent actor who, without knowledge on his part of a conspiracy and of the purpose of a conspirator in asking him to take some apparently legitimate action, is asked to do an act that tends to further the purpose of the conspirator. Thus, the acts of the attorney may become the subject of evidence at the trial of the client on the charge of criminal enterprise.

■ It is my present view, and my ruling subject to any request for reconsideration for good cause shown at the conference scheduled in the Order accompanying this Memorandum, that neither the appearance nor the tendency in fact of impairment of integrity of the judicial proceedings can be avoided unless some procedure can be adopted that not only allows a waiver by the defendants Acquilino and Manual Melo but also removes from the evidence placed before the jury the fact that one of the attorneys appearing before them as counsel was in some way involved in transactions as to which a defendant's participation is claimed to be in furtherance of the charged conspiracy.

This problem is evident from the proffer already before the court. It does not appear that anything that might be developed by an evidentiary hearing in which Attorneys Wall and Mezer were called as witnesses would serve either to make it more apparent or to show any way in which it could be avoided or removed. Permitting counsel to be called as witnesses, even in a hearing out of the presence of the jury, is a

step a court should ordinarily be reluctant to take. *Cf. United States v. LaRouche Campaign*, 682 F.Supp. at 615–617.

The court's central concern is that a jury may speculate about the attorney's conduct, knowledge, and involvement in the alleged scheme by defendants to provide attorneys fees and other monies to members of the organization. In these circumstances I conclude that an evidentiary hearing would serve no useful purpose.

## VI.

Defendants have advanced suggested remedies, in addition to securing *Foster* waivers from defendants Acquilino and Manuel Melo, to alleviate concerns about conflict-free representation and integrity of the judicial proceedings. First, defendants argue for the exclusion of the government's proffer on Fed.R.Evid. 403 grounds. It is improbable, however, that it is both feasible and proper for the court to make a determination at this time about whether the probative value of the evidence proffered is substantially outweighed by the danger of unfair prejudice. Defendants do not "object" to specific evidence proffered by the government. Rather, defendants make a general argument that any evidence referring or relating to attorney conduct should be excluded as unduly prejudicial and of marginal relevance to the crimes charged in the indictment. There is a severe problem, however, about attempting to make a determination on a Rule 403 objection at this time because the court does not have information before it that would enable the court to make a reasoned assessment of the need for the evidence, or what, if any, probative value it will have at trial. It is also neither feasible nor appropriate for the court to defer until the midst of trial a determination of the disqualification motion as it might be affected by a Rule 403 weighing of evidence. This is so because, if the court concludes at trial that the evidence should be received in the presence of the jury, disqualification will no longer be a suitable remedy for the problems of conflict and appearance. Thus, although a Rule 403 objection may be appropriate at trial as to specific evidence

offered by the government, I conclude that I cannot determine at this time that all evidence the government may offer on this subject matter is inadmissible.

Second, defendants assert that the government's proffer can be sanitized. Defendants point out that the tape recorded conversations refer only to a "lawyer", rather than to "Weiner." They propose that it would be easy to redact the name of "Weiner" from any documentary evidence the government might introduce at the trial. *See United States v. Diozzi*, 807 F.2d at 14 n. 8.

Redacting Weiner's name from the documentary evidence may alleviate some of the concerns noted above. Other concerns remain, however. Among them is the likelihood that jurors will be puzzled about and will speculate as to why they are not being told who the lawyer was and whether one of the lawyers in court is that person.

Ways in which these concerns may be addressed, short of disqualification of the attorneys, have not been fully addressed in the submissions before me. I will defer ruling on the government's motion for disqualification to allow counsel an opportunity for prompt filing of any specific proposal they may wish to make and submissions explaining how any proposal advanced would serve to alleviate the concerns identified in this Memorandum.

If some arrangement such as redaction is to be used, it is important that it be clearly defined in advance of trial. Any proposal presented should for this reason be clear and explicit in its terms, and counsel should present it in the form of a proposed stipulation and order. Such submissions may be filed before the conference scheduled in the Order below.

## VII.

The government argues that counsel should be disqualified for a reason independent from the problem discussed in Parts II–VI. The argument is that there exists an identifiable actual or potential conflict of interest between the defendants, Acquilino and Manuel Melo, so that one firm can-

not represent both defendants. This conflict, the government argues, can be inferred from the fact that Manuel Melo is alleged to be the "assistant" to Acquilino Melo. However, in light of the defendants' *Foster* waivers, the government concedes that it cannot move to disqualify on that basis alone. Although the government purports to offer other evidence of an actual or potential conflict, no such evidence, other than the conflict previously discussed regarding Weiner's and Melo's alleged knowledge of or involvement in the payment of attorneys' fees for Pauline's case, has been called to the attention of the court.

In light of the *Foster* waivers, the fact that the two defendants are brothers, that Acquilino Melo has been advised by independent counsel, and that the government has produced no evidence of conflict between Acquilino and Manuel Melo aside from their differing positions in the organization, I conclude that disqualification would be improper on this basis alone. The government argues, however, that this potential conflict when added to the more compelling ground for disqualification discussed previously in this Memorandum, warrants disqualification. In light of the previous ruling by this court that the government has raised concerns that warrant a further hearing in which the court will consider proposals by defense counsel and arguments by the parties on what remedies are available short of disqualification, I decline to rule on this separate ground for disqualification at this time. If it is determined that it is not necessary to disqualify counsel for the reasons discussed in Parts II–VI of this Memorandum, I will consider this argument at the appropriate time.

## VIII.

Suggestions have been made, both at the hearing on October 11–12, and in the written submissions, that the court could sever from the rest of the case Counts 9 and 10 and the related allegations in Count 1 of obstruction of a criminal investigation. These suggestions are dubious at best, however, in light of, first, the relationship between the substantive counts and the charge of conspiracy in Count 2, and, second, the strong likelihood that, but for the concerns associated with defendants' choices of counsel, allowing a defense motion for severance would be a clear departure from precedent. In any event, no motion presenting a properly formulated and justiciable issue has been proposed to the court. Accordingly, I have not addressed in this Memorandum and Order defendants' suggestion regarding severance.

### ORDER

For the foregoing reasons it is ORDERED:

(1) Ruling on the government's motion to disqualify defense counsel is deferred.

(2) Further submissions in accordance with Part VI of the foregoing Memorandum may be filed on or before January 4, 1989.

(3) A hearing is scheduled for 10:00 a.m., January 6, 1989.